## In re Will of Norman.

1. **Will**: SANITY OF TESTATOR: OPINION OF NON-EXPERT: GROUNDS OF. It is the settled rule in this state that a witness not an expert may express an opinion of the sanity or insanity of another, having first detailed the facts and circumstances on which the opinion is founded. And where the inquiry is as to the sanity of a testatrix during her last sickness, the witness may consider, in forming his opinion, not only what he observed during that time, but also any circumstance or fact which happened previous to that, and at a time when the testatrix was confessedly sane, provided always that he detail all the facts and circumstances so considered by him. (*Severin v. Zack*, 55 Iowa, 28, followed, and *State v. Stickley*, 41 Id., 232, distinguished.)

2. **Expert Testimony**: HYPOTHETICAL QUESTIONS: WHAT MAY BE ASSUMED. A hypothetical question put to an expert witness, with the view of eliciting an opinion thereon, should include only such facts as are admitted or established, or as there is evidence tending to establish. It is not a question as to the weight of the evidence, but whether there has been *any* evidence tending to establish the assumed fact. (See opinion for illustration.)

3. ———: ———: EXCLUSION OF: TRIAL TO COURT: PRESUMPTION. Where the trial is to the court, in a cause triable by ordinary proceedings, and a hypothetical question to an expert is excluded on the ground that some of the facts involved in the hypothesis have not been proved, this court will not reverse the judgment on the ground of such exclusion, though it might be of the opinion that there was evidence tending to establish each of the assumed facts. In such case the rule applies, that every reasonable presumption will be indulged in favor of the ruling of the trial court.

4. **Will**: PROBATE: KIND OF PROCEEDINGS: APPEAL. Issues arising upon the probate of a will are triable by the ordinary method, and so are not triable *de novo* on appeal; and in such case the verdict of the jury or finding of the court will not be disturbed for want of evidence, when the evidence is conflicting.

### *Appeal from Jasper Circuit Court.*

### TUESDAY, JUNE 21.

MARY NORMAN executed a will, by which she bequeathed a life-estate in certain real estate to her husband, Q. P. Norman, with remainder to C. R. Graham and Patrick Shea. She died a few days after the execution of the will. At the

time fixed for proving the will the husband appeared, and contested on the ground that the testatrix, at the time it was signed, was of unsound mind, and incapable of making a will, and that she executed the instrument under undue influence. The issue was tried to the court without the intervention of a jury, and the court found that the testatrix was of unsound mind, and incapable of executing a will, when she signed the instrument, and refused to admit it to probate. The proponents appealed.

*Clements & Ward* and *Winslow & Varnum*, for appellants.

*L. A. Williams* and *Harrah & Myers*, for appellee.

REED, J.—As the court based the order refusing to admit the will to probate on the finding that the testatrix, at the time she signed the instrument, was incapable, owing to unsoundness of mind, of executing a will, we will assume, (although the judgment record is silent on the subject) that it found against the contestant on the other ground alleged. We will not, therefore, consider those errors assigned which relate to rulings made upon questions arising upon the trial of that issue; for, as the finding of the court is assumed to have been in favor of the proponents on that issue, they were not prejudiced by the rulings, even though they should be found to be erroneous.

The testatrix was about sixty-eight years old when the will was executed. For many years before her death she and her husband had lived a secluded life upon a small farm in Jasper county, having but little intercourse with their neighbors. She appears to have been very eccentric in her conduct, and of a somewhat miserly disposition. She had no children and no living relatives except a brother, with whom she had had no communication for many years; and she had a strong aversion to the relatives of her husband. She died of heart disease, which caused dropsy. The disease was

probably of long standing, but she was not regarded as in a specially dangerous condition until about a week before her death. Although some of her previous eccentricities were shown, it is not claimed that she was then insane, or that her testamentary capacity was destroyed before her last severe sickness set in. It is shown that at times during this sickness she was "flighty" and irrational, sometimes lying in a stupor or semi-comatose condition. At other times she appeared to be rational, and talked intelligently about her condition and her household affairs and business. It was during this sickness that the will was executed.

I.   A witness who had known the testatrix for many years, and who was with her frequently during her last sickness, and assisted in nursing and caring for her, was asked whether she noticed any difference in her mental condition during that time from what it had been before that, and, having answered that she did, she was then asked what noticeable difference there was in her condition at that time from what it had formerly been, and in answer to that question she pointed out the respects in which she appeared to be different. The witness also gave it as her opinion, based upon the facts she had detailed, that the testatrix was of unsound mind during the period of her last sickness. These questions and answers were objected to by the proponents, on the ground of incompetency, and the overruling of this objection is assigned as error.

1. WILL: sanity of testator: opinion of non-expert: grounds of.

Counsel admit that the settled rule in this state is that a witness not an expert (to which class the witness in question belongs) may express an opinion as to the sanity or insanity of another, having first detailed the facts and circumstances upon which the opinion is formed. They contend, however, that, as the inquiry is as to the sanity of the testatrix at a particular time, viz., during her last sickness, the opinion could be formed only from the observation of the witness during that time, and that she could not be permitted to con-sider, in forming her opinion, any circumstances or facts

which happened previous to that, and at a time when the subject was confessedly sane.

But we are of the opinion that the settled rule on the subject was not infringed by the questions and answers objected to. The witness was asked simply to state the respect in which the mental condition of Mrs. Norman appeared to be different during her last sickness from what it had been prior to that, and she stated wherein the difference consisted. In forming the opinion that she was of unsound mind during her sickness, she no doubt took into account the fact that a marked change in her condition had taken place, and clearly she might do that. In forming an opinion on the subject, the witness may take into consideration any fact or circumstance within his knowledge or observation which to him appears to afford evidence of the mental condition of the subject at the time in question. He is required, however, to detail all the facts and circumstances considered by him in forming the opinion, in order that the court or jury may be in a position to judge of the weight and value of the opinion. The question here presented was decided adversely to the appellants in *Severin v. Zack*, 55 Iowa, 28, and this holding is not in conflict with *State v. Stickley*, 41 Iowa, 232.

In that case a witness was asked to give an opinion as to the sanity of the defendant at the time in question, based upon his observation before that, and his conduct and conversation at the time. But he had not detailed his conversation or actions at that time; nor did he claim to have observed them with any particularity. And the evidence of his opinion was excluded upon the ground that it did not appear that he was in any position to form a correct opinion, and he had not detailed the facts upon which whatever opinion he entertained was formed. It is said in the opinion that he could not form an opinion from his former knowledge and acquaintance with her; and that was certainly true, for there was no claim that she was insane at that time. The witness

clearly could not form an opinion on the question whether she was insane at the time in question, merely upon his observation of her conduct at the time when she was confessedly sane. And that is all that is decided by the case. Substantially the same rulings were made with reference to the testimony of other witnesses, and we think they were correct.

II.   A witness, who was examined as an expert, was asked an hypothetical question, one fact stated in which was that the testatrix was in a semi-comatose condition when she signed the will. The court overruled an objection to the question on the ground that there was no evidence tending to prove that fact. The rule certainly is that a hypothetical question, put to a witness with the view of eliciting an opinion thereon, should include only such facts as are admitted or established, or which there is evidence tending to establish; for an opinion based upon a supposed state of facts can be of no value unless the existence of that state of facts is shown.

*2. EXPERT testimony: hypothetical questions: what may be assumed.*

But we are of the opinion, after a careful reading of the evidence, that it cannot be said that there was no evidence tending to prove the fact in question. No person was present at the moment the will was signed except the two subscribing witnesses and one of the residuary legatees. The subscribing witnesses testified that she appeared to understand the provisions of the will, and that she intelligently discussed them with one of them, who wrote the instrument, before signing it. But there was other evidence of her condition immediately before and after that, and of her condition generally during her sickness; and all of this evidence was proper to be considered in determining the question. It is not a question as to the weight of the evidence, but whether there was any evidence tending to prove the fact. We think the ruling affords the proponents no just grounds of complaint.

III.   The circuit court sustained an objection to an hypo-

thetical question asked a number of expert witnesses exam-
ined by the proponents, on the ground that the

**3. ——: ——:**
**exclusion of:**
**trial to court:** facts involved in the hypothesis were not proven.
**presumption.** While it seems to us, from an examination of the
evidence, that there was some evidence tending to prove each
of the facts assumed by the question, we think we cannot
reverse the judgment because of the exclusion of the ques-
tion. If the case had been tried to a jury, the question cer-
tainly should have been allowed, for in that case it would
have been the right of the parties to have the question of
the existence of the facts determined by the jury. But it
was tried by the court, and the judge, who had the evidence
before him, may have been of the opinion that some of the
facts assumed by the questions were not proven. If that were
the case, the opinions of the witnesses which were to be
formed on the assumption that the facts stated did exist,
would, as we have said, have been of no value whatever. We
will indulge every reasonable presumption in favor of the
correctness of the ruling of the trial court. Under this pre-
sumption the ruling in question must be sustained, for it does
not affirmatively appear to have been erroneous.

IV. It is finally insisted that the finding that Mrs. Nor-
man was of unsound mind when she signed the will is against

**4 WILL: pro-**
**bate: kind of**
**proceedings:**
**appeal.** the evidence. But we cannot disturb the judg-
ment on that ground. There was evidence
which tended to prove that fact, and there was
great conflict in the evidence with reference to it. The
cause is not triable *de novo* in this court, but is governed
by the rules applicable to the trial of ordinary actions;
and in such cases we will not reverse the finding of the jury
or trial court on a question of fact when there is a fair con-
flict in the evidence.                                    AFFIRMED.