THE STATE V. WINTER.

72 627
97 198

72 627
112 443

72 627
136 748

72 627
139 408

1. **Criminal Law**: JURORS: OVERRULING CHALLENGES: NO PREJUDICE. The overruling of defendant's challenges to jurors, for cause, cannot be said to have prejudiced him, where none of the jurors so challenged sat on the trial,—all having been rejected on peremptory challenges,— and he accepted the jury which tried him, without exhausting all of his peremptory challenges. (Compare *State v. Davis*, 41 Iowa, 311.)

2. **Criminal Evidence**: QUESTION IRRELEVANT TO ISSUE. For the purpose of showing that one of the state's witnesses was prejudiced against defendant, he was asked on cross-examination whether he had not made to S. certain statements derogatory to defendant. He answered that he had not, and said that S. had contradicted himself as to certain parts of the alleged statements. He was then asked, "How does he contradict himself?" *Held* that the question was properly excluded, because it was not relevant to the subject of inquiry, to-wit, the witness' prejudice against defendant.

3. ———: MURDER: EVIDENCE OF KILLING: CLOTHING OF DECEASED. Although there is no controversy about the fact of the killing, on a trial for murder, yet the state must affirmatively prove that fact, as it is put in issue by the plea of not guilty; and the clothing of the deceased, showed the location of the wound, and its consequent fatal character, is competent evidence for that purpose.

4. **Evidence**: INSANITY: EXPERT: REPETITION EXCLUDED. A physician, having testified as an expert on defendant's behalf to the existence of a certain form of mania, was asked by defendant if he had read the opinion of a certain author as to the existence of the same form of mania, (counsel stating in the question what that opinion was,) and, if so, whether it agreed with his opinion. *Held* that the question only sought to elicit a restatement of the witness' opinion, and that therefore it was properly excluded.

5. ———: ———: TEACHING OF MEDICAL AUTHORITIES. It is not competent to ask a physician as an expert, in the examination in chief, what the medical authorities teach on a given point, for their works are the best evidence as to that; but on cross-examination such questions may be asked to test the accuracy of the witness' knowledge.

6. ———: ———: MEDICAL WORKS. On the issue of the insanity of defendant, an elaborate discussion by a medical author of the question of the responsibility of an insane person for his acts committed while in that state was properly excluded, when offered to be read to the jury, because it was their duty to be guided by the instructions of the court on that subject, and not by what a certain author might say.

7. ———: FOUNDATION FOR IMPEACHMENT: ERROR WITHOUT PREJUDICE. Defendant, in order to lay the foundation for the impeachment of one of the state's witnesses, asked him whether he had not made statements to W. contradictory to his testimony in chief, but the court overruled the question, on the ground that he had before been asked and had answered it, which, however, was not true; but on the same erroneous ground defendant was permitted to introduce W., and examine him in relation to the alleged contradictory statement. *Held* that defendant was not prejudiced by the error, and could not be heard to complain of it on appeal.

8. ———: INSANITY: CONDUCT SIMILIAR TO THAT OF INSANE BROTHER. On the question of defendant's insanity, it was not competent to show that a peculiarity of his, after receiving a certain injury, was like a peculiarity of an insane brother of his,—it not appearing that the peculiarity is generally, or was in the case of the brother, a result of insanity, or evidence of it.

9. ———: ———: OPINIONS OF NON-EXPERTS: FOUNDATION FOR. On the question of defendant's insanity, non-expert witnesses, who testified that they had been well acquainted with him for a long time, and had observed his manner and conversation before and after the time of his alleged insanity, and that they discovered no change in him in those respects, were, upon such foundation, authorized to give an opinion that he was not insane after the time alleged,— there being no pretense that he was insane before that time. (Compare *Severin v. Zack*, 55 Iowa, 28, and *In re Will of Norman, ante*, p. 84.)

10. Instructions: REPETITION NOT REQUIRED. The court is not required to give an instruction asked, when the same ground is substantially covered by the charge given.

11. ———: ERROR CURED BY VERDICT. On a trial for murder, an error of the court in defining malice became immaterial when the jury brought in a verdict of manslaughter only, for malice does not enter into that offense.

12. Criminal Practice: MISCONDUCT OF COUNSEL: NO PREJUDICE. Certain statements made by counsel for the state (see opinion) are condemned as not warranted by the record, but, as it does not appear that defendant could have been prejudiced thereby, they are *no ground for a reversal on his appeal*.

*Appeal from Plymouth District Court.*

FRIDAY, OCTOBER 14.

THE defendant was accused of the crime of murder in the first degree, committed in the killing of one Hugh Moist. He was tried by a jury, who found him guilty of manslaugh-

ter, and the district court sentenced him to a term of imprisonment in the penitentiary, and from that judgment he appeals.

*Argo & Augir* and *Cole, McVey & Clark*, for appellant.

*A. J. Baker, Attorney-general*, for the State.

REED, J.— The deceased and defendant lived on adjoining farms. Previous to the occurrence in question, they had had difficulty, and on one occasion they engaged in a personal conflict, in which defendant was worsted. On the occasion in question, deceased was riding on the highway near defendant's house, when defendant accosted him, and asked him for a receipt for certain money which he had previously paid him as road taxes, the deceased being the supervisor of highways in that district. A quarrel arose between them, in which each applied insulting and opprobrious epithets to the other. Defendant seized a piece of plank, and, as the prosecution claimed, assaulted Moist with it. But defendant's claim is that he used the weapon in defending himself from an assault by Moist. Moist also seized the plank, and the parties struggled for the possession of it. Defendant directed his wife, who was present, to go to the house and bring his revolver to him, but she refused to do so. One Shrader, an employe of defendant, was present at the time, and he went to the house and got the revolver, and handed it to defendant. Moist, in the mean time, had let go of the plank. After he received the revolver, defendant fired one shot from it, which struck Moist, inflicting a wound from which he died in a few minutes. It was urged in defense (1) that defendant acted in self-defense; and (2) that at the time of the killing he was insane, and not criminally responsible for the act.

I.　The defendant challenged five persons who were called as jurors, for cause, the ground of the challenges being that the jurors had formed such an opinion as to the guilt of the defendant as would prevent them from rendering a true verdict on the evidence. But the challenges were overruled by the court. While we

1. CRIMINAL LAW: jurors: overruling challenges: no prejudice.

think the challenges in one or two instances should have been sustained, we are very clear that defendant was not prejudiced by the order of the court overruling them.   None of the persons to whom they applied served on the jury, having all been challenged peremptorily by either the district attorney or the defendant.   Defendant did not exercise the full number of peremptory challenges allowed him by the statute, but accepted the jury after the district attorney had exercised the ten challenges allowed him.   By waiving the remaining challenges allowed him, and accepting the jury, he declared that he was satisfied with it as then constituted, and he could not have been prejudiced by the erroneous rulings of the court as to the competency of persons who were not then of its number.   *State v. Davis*, 41 Iowa, 311.

II.   The state introduced a witness who was present at the killing, and who was claimed by defendant to be hostile

2. CRIMINAL evidence: question irrelevant to issue.

to him.    On    cross-examination,    defendant's counsel asked the witness whether he had not stated to one Sandford that he had whipped defendant and his brother, and had applied certain opprobious epithets to them, but could not get a fight out of them.   The witness answered that no such conversation had taken place between him and Sandford; also that Sandford contradicted himself as to certain parts of the alleged statement.   He was then asked the question : " How does he contradict himself ? "    But, on objection by the district attorney, the question was disallowed.   Counsel contend that they should have been permitted to go into the inquiry, for the purpose of showing that the witness was prejudiced against the defendant.   But the question had no tendency to show that fact.   If the witness made the statement attributed to him in the former question, of course that was evidence of a hostile feeling on his part towards defendant. But his belief that Sandford's story was inconsistent or contradictory had no such tendency.   The subject of the inquiry was entirely foreign to the matter in issue.

III. The state was permitted, against defendant's objection, to introduce in evidence the jacket and shirt worn by the deceased at the time of the shooting. It is insisted that there was no controversy as to the fact of the killing, and that the only effect of exhibiting to the jury the clothing worn by the deceased, and which was stained with his blood, was to arouse their prejudice. It may be true that but little question was made on the trial as to the fact of the killing; still the burden was on the state to prove that fact. Defendant's plea of " not guilty " put in issue every allegation of the indictment, and, if the prosecutor had failed to prove the killing, defendant would have been entitled to an acquittal. As the prosecutor was required to prove that fact, he had the right to introduce any competent evidence which tended to prove it. · The clothing showed the location of the wound, and its consequent fatal character. It was therefore competent evidence of the fact.

IV. A physician, who had had fifteen years' experience in the treatment of insane patients, was examined as a witness on behalf of defendant. The effort was to establish by the testimony of this and other medical witnesses that the profession recognizes the existence in some cases of a form of mania which attacks the patient instantly, but which is temporary and transitory in its nature. The witness testified that " there are cases where an individual hitherto perfectly sane, and in the full possession of his intellect, is suddenly seized with the most anxious and painful emotions, and with a homicidal impulse as inexplicable to himself as to others. This form of insanity many times is of brief duration, and probably the more sudden the attack the shorter the duration." He was then asked the following question : " Have you read the article by Dr. Castleman, in the American Journal of Insanity, in which the author says : ' Mania,— instantaneous, temporary, fleeting,— a disease which breaks out suddenly like the sudden loss of sense by some physical disease ; the subject

*3. ——: murder: evidence of killing: clothing of deceased.*

*4. EVIDENCE: insanity: expert: repetition excluded.*

is urged in a moment to automatic action, which would not have been foreseen?' If you say you have read the above quotation, state whether the same agrees and accords with your knowledge and experience on the subject." On the objection of the district attorney, the court excluded the question. It is not claimed that the question was asked with the view of laying the foundation for the introduction in evidence of the article referred to; but the object was to elicit the opinion of the witness. It will be observed, however, that the answer of the witness (which we assume would have been in the affirmative) would have been but a reiteration in another form of the opinion he had already expressed. He had already testified to the existence of the very form of mania referred to in the article. The fact or theory sought to be established was material and important, but, as the witness had already clearly expressed his opinion as to its truth, the court did not abuse its discretion in refusing to allow the question, which, as we have said, sought only to elicit a reiteration of that opinion.

V. The same witness was asked the following question, which the district court ruled was incompetent: "State whether delusion or transitory mania is a condition recognized by medical authorities." It would be admissible, perhaps, on the cross-examination of a medical expert, to inquire of him as to the teachings of the authorities in his profession. The object of such examination, however, would be to test the accuracy of the expert's knowledge. But the question in this case was asked, not with this view, but for the purpose of proving that the theory in question is taught by the authorities. But the works themselves were admissible in evidence, and they are the only competent evidence of what they teach.

5. ——: ——: teaching of medical authorities.

VI. Defendant introduced in evidence Maudsley's work on Mental Diseases, and read portions it to the jury. Some portions of the work which defendant offered to read were excluded by the court. They all relate to the question of the responsibility of an insane person for

6. ——: ——: medical works.

his acts committed while in that condition, and are an elaborate discussion of that question. They might properly be considered by the courts in determining the law of the question. But the jury were bound to accept the law as given by the court, and were not charged with the duty of determining whether the rules laid down by the court were correct. The action of the court in excluding the portions of the work in question is clearly right.

VII. After the state had rested, the defendant's counsel recalled the witness Shrader, (who was present at the shooting, and had been examined as a witness by the state,) for further cross-examination, and asked him whether he had not made a statement of the circumstances of the transaction to one Alonzo Wallace, which was materially different in some respects from the account given by him on the witness stand; but the district court sustained an objection to the question. The question was asked for the purpose of laying the foundation for the impeachment of the witness, by showing the contradictory statement. The objection urged by the district attorney was that defendant had not the right to recall the witness for that purpose at that time. In sustaining the objection, the court remarked that the question had been asked and answered by the witness on his former examination. It is claimed, however, that the court was mistaken as to that, and it does not appear from the abstract that the question had been asked the witness, or that his attention had been called to the alleged conversation with Wallace. It may be conceded that the court was mistaken as to that fact, and it may also be conceded that defendant had the right at that stage of the case to recall the witness for that purpose. But it is clear that no prejudice resulted to defendant from the ruling of the court. He was permitted to call the witness Wallace, and examine him as to the alleged contradictory statement.

The rule which requires that the attention of the witness shall be first called to the alleged contradictory statement,

*7. ———: foundation for impeachment: error without prejudice.*

and to the time and place when made, and the person to whom it was made, is for the protection of the witness, and the reason of the rule is that it is just to him that he should have the opportunity to explain the statement, or to correct his testimony, if his recollection should be refreshed by having his attention called to it.    But, if he denies having made it, the weight of his testimony is impaired, not by that denial, but by the proof that he did make the inconsistent or contradictory statement, so that defendant had all the benefit and advantage which would have accrued to him if the question had been allowed.

VIII.    It is claimed on behalf of defendant that in his former conflict with Moist he received an injury on the head, and that his brain had thereby been affected, and that that was the exciting cause of his insanity. It was proven, also, that one of his brothers had been insane, and had been confined for treatment in one of the state hospitals for the insane.    A witness testified to certain peculiarities in his conduct and manner after the conflict with Moist, one of which was a habit of " talking to himself."    The witness was then asked whether that was a peculiarity of his brother's conduct while he was insane, but the court sustained an objection to the question.    The witness was but an ordinary witness, having no knowledge of the manner or habits of insane persons generally in that respect, nor was it attempted to be proved that such persons generally were addicted to that habit.    But the effort was to prove that in that single respect the conduct of defendant was similar to that of his insane brother, with the view, doubtless, of asking the jury to draw the inference from that similarity in their conduct that he was also insane.    Defendant was entitled to have the peculiarities of his conduct considered by the jury in determining the question of his insanity. But he was not entitled to give in evidence a single peculiarity of an insane person, and to claim that a similar peculiarity in his own conduct was evidence that he was insane ; for, as it was not proven that the peculiarity in his brother's

8. ——: insanity: conduct similar to that of insane brother.

conduct was the result of his insanity, or that the habit in question is peculiar to the insane, it cannot be said that it is any evidence of insanity. Indeed, it may be said to be within the observation of all that many persons who have never been suspected of being insane indulge in the same habit.

IX. A number of ordinary witnesses were permitted, against defendant's objection, to testify that in their opinion

9. ——: ——: defendant was not insane after his former con-

opinions of
non-experts: flict with Moist. The objection urged against
foundation
for. the admission of this testimony is that the witnesses had not, before expressing their opinions, detailed the facts and circumstances upon which the opinions were formed. But the witnesses did testify that they had been well acquainted with defendant before the conflict, and had observed his manner and conduct; also that they had seen him frequently after that, and had observed his manner and conduct, and also his conversation at such times; and, in effect, that they had observed nothing different in his conduct at those times from what it had formerly been. There is no claim that defendant was insane before that conflict, but the theory sought to be established is that he became insane after that. Now, if a marked change in his conduct had taken place, a witness, not an expert, who knew that fact, and had testified to it, would be permitted to express an opinion based upon his observation of the change of conduct as to his insanity. *In re Will of Norman*, ante, p. 84; *Severin v. Zack*, 55 Iowa, 28. The opinions in question were based upon the fact, that, within the observation of the witnesses, no change had in fact taken place in his conduct; and we think they were properly admitted.

X. The court refused to give an instruction asked by defendant's counsel on the law of self-defense. The correct-

10. INSTRUC- ness of the instruction may be conceded, and it
TION: repeti- is not necessary to set it out in this opinion. The
tion not
required. court, however, on its own motion, gave an instruction expressing with sufficient clearness the same doc-

The State v. Winter.

trine.   Defendant, therefore, was not prejudiced by the refusal to give that asked by his counsel.

XI.   Exception is taken to an instruction given by the court, in which it defined malice as an element of murder. But, as malice is not an element of the crime of which defendant was convicted, (manslaughter,) he could not have been prejudiced by the instruction, even though it should be found to be erroneous.   We will therefore not inquire as to its correctness.

11. ——:error cured by verdict.

XII.   The district attorney was assisted in the trial of the cause by another attorney, who made the closing argument to the jury.   One of the grounds of the motion for a new trial is that this attorney was guilty of misconduct in stating to the jury certain matters of fact of which there was no evidence, and which were in no manner involved in the issue which the jury were sworn to try.   One of the statements complained of was that the defendant was a man of wealth, and that he had agreed to pay his counsel a large sum as compensation for their services, and that he had raised the same by mortgage on his farm.   This statement appears to have been made in answer to something which defendant's counsel had said by way of stricture, on the fact that private counsel was appearing in the case for the prosecution.   The conduct of the attorney in making the statements, even in answer to what had been said by defendant's counsel, cannot be commended; for the matter stated, if true, was entirely impertinent.   But, while we say this, we are clear that we ought not to disturb the judgment on this ground; for we cannot conceive that the verdict was influenced in the slightest degree by the objectionable statement.   And the same is true as to the other statements complained of.

12. CRIMINAL practice: misconduct of counsel: no prejudice.

Other matters have been discussed by counsel, but the questions raised are not of controlling influence in the case, nor are they of general importance to the profession.

We find no ground for disturbing the judgment.

AFFIRMED.