In re Estate of Patrick Hanrahan.

WILLIAM F. HANRAHAN et al., Appellants, v. VIVIAN HANRAHAN et al., Appellees.

**WILLS:** Testamentary Capacity—Evidence—Sufficiency. Evidence
1   reviewed, and held sufficient to sustain a verdict that testator,

though physically infirm since childhood, and though childish in his later years, had mental capacity to execute a will.

EVIDENCE:   Opinion Evidence—Mental Competency—Non-Expert—
2   Basis for Opinion.   Opinions on *soundness* of mind require no basis other than a showing of familiarity on the part of the witness with commonplace incidents in the life of the person in question.

WILLS:   Testamentary Capacity—Evidence—Guardianship—Weight
3   and Effect.   A person under duly appointed guardianship because of unsoundness of mind is rebuttably presumed to be incapable of executing a will.

*Appeal from Clinton District Court.*—M. F. DONEGAN, Judge.

MARCH 6, 1918.

THIS is a contest upon the will of Patrick Hanrahan. A verdict resulted, admitting the will to probate. The contestant appeals.—*Affirmed.*

*Wolfe & Wolfe,* for appellants.

*A. L. Schuyler* and *J. E. Purcell,* for appellees.

1. WILLS: testamentary capacity: evidence: sufficiency.

EVANS, J.—The contestant is a brother of the testator. The proponents are daughters of a deceased brother. The date of the death of the testator does not appear in the record. Nor is there any direct evidence of the age of the testator at the time of the execution of the will. The will was executed in 1912. Circumstances appearing in evidence perhaps warrant the inference that the testator died in 1916, and that he was less than seventy years of age at the time of the execution of the will. The contest was based upon two grounds:   (1)   That the testator was mentally incompetent to make a will;   (2)   that the execution of the will was obtained by undue influence.

The last ground was abandoned at the trial, and the

evidence was directed wholly to the question of mental competency. Such was the only issue submitted to the jury. Twenty witnesses were examined on each side upon this question. The larger number of them were nonexpert opinion witnesses. The testimony for the contestant was adduced to the support of the contention that the testator was weak and childish mentally. It was not claimed by any witness that the testator was ever insane, in the ordinary sense of the term. One witness for the contestant testified as follows:

"Q. From his appearance and actions, as you noticed it during the time that you were working there, what would you say as to his mental condition, strong or otherwise? A. Why, I would not say he was strong. Q. In his actions there, were his actions childish or otherwise? A. To a certain extent, he was childish. Q. How was he in his way of acting? A. Oh, I don't know; his actions were all right in a way, except he used to have a great laugh about what he would tell you. I worked for McGinn twice. I was there the last time about a month or so. I think I met him the last time a year before he died. I just spoke a few words to him. Q. What change, if any, did you see in his physical actions and appearance from the time that you worked there the first time until the time you saw him in Lyons, a year or so before he died? A. Why, he looked as though he was thinner, and, of course, he was getting old. Q. He was weaker; and how about his mental faculties,—were they weaker or stronger than they were when you first knew him? A. Oh, just about the same. I didn't see much change in that way at all. I wasn't talking with him very long; just spoke a few words to him."

The foregoing is fairly illustrative of the testimony on behalf of the contestant. The contestant himself testified as follows:

2. EVIDENCE: opinion evidence: mental competency: non-expert: basis for opinion.

"Q. During the times that he was up there afterwards, and the last five or six

years of his life, tell the jury what his mental condition was, as to whether it was strong or weak, as it appeared to you from what you have said to him, and from your observations of him at these times. A. Why, I should judge, to my judgment, showed that he was growing weaker, and I saw that, and would not talk very much to him. His actions during the period referred to in the last question were childish mostly. His physical health was not very good. He had a bad cough and sore throat, and coughed pretty near sometimes half the night long. His physical condition was not good at all for years."

The history of the testator's life, as given on behalf of the contestant, was that, as a boy of ten years, he had an illness of measles, which left him with an affection of the throat, from which he suffered all his life. This affected his voice, and made speech more or less difficult for him. He also coughed a good deal. He had not been rugged physically throughout his life. He had but few school advantages, and learned very slowly. He could not write. He was an unmarried man. He made his home all his adult life with the family of his brother Tom, on a farm. He lived happily therein. He and Tom farmed in partnership as long as Tom lived. Tom died many years before the testator, but his surviving family continued upon the farm, and the testator continued to live with them. The will in question was the third that the testator had made within a period of about ten years. The present will was consistent with those that preceded it, in the sense that they all gave the body of his estate to the surviving members of Tom's family. Following the making of the first will, one of the beneficiaries, the only son of the family, died. This furnished the occasion for making the second will, which gave the body of the estate to the mother and her daughters. Thereafter, the mother died. This furnished the occasion for the present will, which devises the body of the estate to the surviving children of the

family, who are the proponents herein. The estate consists of a farm of 120 acres. Disregarding, for the moment, certain guardianship proceedings had in the lifetime of the testator, the verdict rendered has the support of the great preponderance of the evidence. The errors assigned by the appellant relate to the admission of certain testimony, and to certain instructions.

I. The first three errors relied on for reversal are as follows:

"There was error in permitting the witness to answer the question, 'Now, based upon the talks that you had with him at that time, that you have narrated to the jury, with reference to sales and purchases, his memory as to what was done for the things that he took away that he didn't then personally pay for, his statements about and conversations about farming and transactions of that kind, and these transactions, you may state whether Mr. Hanrahan was a person of unsound mind or not.' There was error in permitting the same witness to answer the question, 'You may state whether he was of sound or unsound mind, based upon this same state of facts.' (Overruled. Contestants except. Same objection.) There was error in permitting the witness to answer: 'You may state whether or not, based upon the transactions that you had with him, which you have detailed here to the jury, and the conversations that you had with him in these transactions, and the questions in changing the money that came up with him, whether or not, as you have described them here to the jury, and on these only, whether or not he was a person of sound or unsound mind.' (Objected to on the ground that the witness, from the facts he has given so far, has not shown that he is qualified to answer, and is incompetent, irrelevant and immaterial.)"

The foregoing are fairly illustrative of the first twenty-two assignments of error. The witnesses referred to testified to conversations and transactions had between them and the

testator, and based thereon an opinion that he was of sound mind. The emphasis of appellant's objection to this testimony is based somewhat upon *Bales v. Bales,* 164 Iowa 257. The point urged is that it was not competent for the witness to state a favorable opinion of the soundness of the testator's mind without first stating particular facts which were sufficiently significant and extraordinary to indicate mental soundness. The facts testified to by the witnesses in most instances were of a commonplace nature, comprising simple transactions and passing conversations. The *Bales* case is not authority for appellant's contention. The question in that case was whether a non-expert witness could base an opinion of mental unsoundness without first stating facts which had some tendency to indicate mental unsoundness. It does not follow, by any means, that such rule is applicable to an opinion of mental soundness. Soundness is the rule, and unsoundness the exception. A person mentally sound acts in the ordinary and expected way. There is nothing about his conduct to excite particular attention. The person of unsound mind is liable to do the unexpected thing. This attracts attention, and may be described by the witness as a basis for an unfavorable opinion; whereas, it is evidence of a man's mental soundness that nothing out of the ordinary should be observed in his conduct when conversations or transactions are had with him. The opinion evidence complained of by the appellant was properly received. *In re Will of Fenton,* 97 Iowa 192; *In re Will of Norman,* 72 Iowa 84; *Spiers v. Hendershott,* 142 Iowa 446; *Erwin v. Fillenwarth,* 160 Iowa 210.

II. It was made to appear that, in September, 1895, W. F. Hanrahan, contestant herein, made application for appointment as guardian of Patrick Hanrahan, as a person of unsound mind, and incapable of taking care of his property. In February, 1896, a final order was

3. WILLS: testamentary capacity: evidence: guardianship: weight and effect.

made, appointing W. F. Hanrahan as permanent guardian. The order was entered without contest. It is now urged in his behalf that this judicial finding was conclusive against the mental capacity of the testator to make his will, unless it were shown that there had been an improvement in his condition after the year 1895, and before the year 1912. 'The trial court instructed the jury that the order in the guardianship proceeding created a presumption of incapacity, but that the presumption was not conclusive. We think the instruction was right. As a matter of law, a testator may have testamentary capacity and yet be a proper subject for the appointment of a guardian for the transaction of business. *Linkmeyer v. Brandt,* 107 Iowa 750; *Rice v. Rice,* 50 Mich. 448 (15 N. W. 545) ; *Harrison v. Bishop,* 131 Ind. 161 (30 N. E. 1069).

The practical reasonableness of such a holding is well illustrated in the facts of the case under consideration. It does not appear from the record what circumstances moved the present contestant to apply for guardianship for his brother in 1895., Though he was then appointed guardian, it does not appear that he took possession of his ward's property, or that he transacted any of his business, or that he ever made a report. Indeed, the evidence is undisputed on both sides that, during the entire period of time ensuing thereafter, the testator took care of his own business, such as he had, and that he squandered no property. The foregoing comprise the principal errors presented for our consideration. Some other minor errors are specified, but we find none of them well taken. The case was peculiarly a fact case, and the verdict of the jury was quite conclusive on the appellant. We find no error, and the judgment below is—*Affirmed.*

Preston, C. J., Ladd and Salinger, JJ., concur.