PHOENIX TRUST COMPANY, Appellee, v. E. J. VAUGHT et al., Appellees; BATAVIA SAVINGS BANK, Appellant.

HOMESTEAD: Mortgage—Homestead and Nonhomestead Property—
1  Sale en Masse—Appropriation of Surplus. A junior execution creditor who, at a senior mortgage foreclosure sale, buys in property which, in accordance with the mortgagor's agreement to that effect, is sold *en masse,* and regardless of the homestead character of part of the property, and who, in so buying, bids an amount in excess of the senior mortgage debt, on the express condition that said excess be indorsed on his junior execution (which is done), and who, with the full knowledge of the mortgagor, and without objection by him, complies with his bid, and after a year for redemption takes a deed, is not thereafter liable to the mortgagor for the amount of said excess on the theory that such excess represents the mortgagor's homestead, on which the junior execution creditor admittedly had no lien. This is true (1) because the mortgagor by his silence has permitted the junior execution creditor to change his position to his detriment, and is estopped to question the appropriation of said excess, and (2) because the mortgagor, by failing to attack said sale, and by demanding said excess under

and by virtue of the sale, has confirmed the bid and all matters inhering therein,—i. e., the condition attending said bid.

**HOMESTEAD: Abandonment—Evidence.** Evidence reviewed, and held
2   insufficient to show an abandonment of a homestead.

**HOMESTEAD: Change of Homestead—Evidence.** Evidence reviewed,
3   and held wholly insufficient to sustain a claim to homestead exemption of the proceeds of an execution sale on the ground of intended use in acquiring another homestead.

**HOMESTEAD: Mortgage—Homestead and Nonhomestead Property—**
4   **Sale en Masse—Apportionment of Surplus.** Though it be conceded, *arguendo*, that, where mortgaged property is sold on foreclosure *en masse*, and regardless of the homestead character of part of the property, to a junior execution creditor on an indivisible bid in excess of the mortgage debt, the mortgagor would have a recoverable interest in the excess on the theory that it represented his homestead, on which the junior creditor had no lien, nevertheless the mortgagor would not be entitled to recover the *entire* excess, because equity would require the bid to be apportioned between the homestead and the nonhomestead property, in order that the homestead should bear its just proportion of the mortgage debt.

Headnote 1:   29 C. J. p. 882.   Headnote 2:   29 C. J. p. 965.   Headnote 3:   29 C. J. p. 836.   Headnote 4:   29 C. J. p. 882.

*Appeal from Jefferson District Court.*—W. M. WALKER, Judge.

NOVEMBER 17, 1925.

REHEARING DENIED FEBRUARY 19, 1926.

THE suit is one by the Phoenix Trust Company against E. J. Vaught and Laura Vaught to foreclose first mortgage given by defendants to the plaintiff. There was a decree of foreclosure under which the mortgaged premises were sold. The present proceeding is a petition in the original suit by the defendants to set aside the foreclosure sale, afterwards amended so as to make it an application to compel the purchaser at the sale, the Batavia Savings Bank, a subsequent lien holder, to pay petitioners the overplus of the bid above the amount due on the special execution. The court gave the petitioners judgment against the Batavia Savings Bank for the amount which the court found to be the entire value of the homestead. The purchaser, the Batavia Savings Bank, appeals.—*Reversed.*

*Thoma & Thoma,* for appellant.

*Ralph H. Munro* and *Jo R. Jaques,* for E. J. Vaught and Laura Vaught, appellees.

*George F. Heindel,* for appellee Phoenix Trust Company.

MORLING, J.—The mortgage covers 224.5 acres, and provides that under it the premises may be sold as an entirety, waiving sale in parcels and waiving sale of nonhomestead part before selling the homestead. The title was in

1. HOMESTEAD: mortgage: homestead and nonhomestead property: sale *en masse*: appropriation of surplus.

E. J. Vaught. Decree of foreclosure was rendered September 29, 1922. Special execution under the foreclosure decree was issued, and the premises were sold as an entirety thereunder January 6, 1923, to the Batavia Savings Bank. In July, 1922, the Batavia Savings Bank, in a personal action against E. J. Vaught, had attached the premises, except that, instead of attaching the northeast quarter of the southeast quarter, the record before us shows that it attached the northwest quarter of the southeast quarter. There were buildings upon the farm of minor value, but whether they were on the northeast quarter of the southeast quarter, or what forty they were on, does not appear. The bank's suit was contested, and on December 12, 1922, the Batavia Savings Bank got judgment against Vaught for over $6,400. By this judgment the attached property was adjudged to be sold on special execution. Special execution for the sale of the attached property was issued, and was in the hands of the sheriff at the time of the sale under the first execution, January 6, 1923.

No demand for platting homestead was made, and no homestead was platted. At the execution sale there was no offer of sale by subdivisions or of the nonhomestead property separately. The entire farm was sold *en masse.* The mortgagee bid the amount of its judgment, principal, interest, and costs, $10,353.64. The Batavia Savings Bank bid $15,000, and the property was struck off to it. There were no other bids. The sheriff applied the overplus, $4,646.36, on the special execution in favor of the Batavia Savings Bank. The Batavia Savings Bank afterwards paid some taxes.

The bank cashier who made the bid testified that, just prior to the sale, he made inquiry of the sheriff whether petitioners had asserted any homestead right, and, after examining the waiver in the mortgage, "naturally supposed that they [petitioners] would not claim any homestead right, also having one in Batavia." He also says that, if the sheriff had offered the premises in parcels, or had sold the 184 acres separately from the forty having the buildings on it, they would not have put in a bid, and would not have put in a bid anyway, but for the fact that they had execution, and had been advised that the sheriff could apply the overplus on it. He and two of the directors say, in substance, that they did not think the farm was worth the amount of the bid; and the cashier says he knew the bank had no right to purchase farm lands, except to protect its interest. They knew that petitioners were living on the farm. "Probably was staying both places part of the time." E. J. Vaught says that he knew that the land had been attached by the bank; knew that the judgment was for the sale of the attached property; knew that the land was sold, and that the bank bid it in for $15,000; knew all those things very shortly after they happened; knew that the overplus had been applied on the bank judgment, and says, "I supposed that is where it would always stay, so far as I knew." He also says that he thought the place was being sold for the mortgagee, and that he could redeem, until he learned afterwards that they had "butted in," and he couldn't redeem for less than $15,000; that he didn't know, until he consulted an attorney in December, that he was entitled to the overplus.

The petitioners did nothing until December 21, 1923, when they filed their original petition in this proceeding, asserting existence of homestead rights, nonplatting, nonoffer of other lands separately; that the nonhomestead lands were of sufficient value to satisfy the decree of foreclosure; that the sheriff applied the overplus upon the bank's judgment,— and asked the court to set aside the sale.

On January 9, 1924, the bank took out sheriff's deed. On January 28, 1924, the bank filed its answer to the original petition in this proceeding, setting up the mortgage, and especially setting out the waiver referred to, and waiver by delay in ob-

jecting to the sale. The answer further stated that the bank would prefer to have repaid the amount it had invested in the land and taxes, than to have the land, and offered to convey upon payment of that amount, with interest and amount paid for recording sheriff's certificate and deed.

After this answer was filed, petitioners amended by setting up the receipt by the bank of the overplus of $4,646.36, and stating that the bank's judgment was not a lien against the homestead at the time the overplus was paid over to it, and that the homestead was worth more than the overplus. By the amendment they claimed judgment for the overplus, exempt from any claims on the part of the Batavia Savings Bank.

The bank then amended its answer, setting up, in substance, the matters testified to by its officers, as previously related. The amendment expressly stated that the bank would not have bid, unless it had believed and understood that the surplus would be applied by the sheriff upon the bank's execution. .

I. The court found the land to be of the uniform value of $80 per acre, and gave judgment against the bank at that rate as the full value of the homestead. We think the value fixed is excessive, but do not pause to discuss that question.

The petitioners acquired homestead rights in the farm on March 1, 1918. The notes on which the bank's judgment was recovered, were dated July 17, 1920. The bank attempted by incompetent evidence to trace the origin of the indebtedness back of March 1, 1918. The evidence does not warrant a holding that the debt to the bank antedated the homestead.

The bank also claimed an abandonment of the homestead. Mrs. Vaught had bought a town property in 1920. The vice president of the mortgagee testified that, at the time she bought it, she said she was buying it as her home. She 2. HOMESTEAD: abandonment: evidence. denied this testimony. She had $500 equity in it; at one time sold it on contract, which was not carried out. The family belongings were left partly on the farm and were partly in the town house. The evidence shows that petitioners stayed part of the time at one place and part at the other; that Vaught paid poll tax in the country, voted in town at the general election of 1920 and the spring election of 1922. He testifies that he understood that by voting in town

he would abandon his homestead on the farm.  Both petitioners say that they did not intend to abandon their home on the farm, but regarded that as their home.

A more detailed discussion of the evidence would be unprofitable.  Suffice it to say that we think the bank has not sustained its claim of abandonment of homestead rights.  *Robinson v. Charleton,* 104 Iowa 296.

II.  Mrs. Vaught in rebuttal said she would like to put the surplus money from her homestead into another home; that "perhaps" she never decided that she would like to put it into

3. HOMESTEAD: change of homestead: evidence.

another home until she was in the judge's office with her attorney, and decided it would be well to state that; that she never knew until just then that she could do that.  This claim is evidently an afterthought.  This testimony is too shadowy to sustain a claim to homestead exemption of the proceeds on the ground of intended use in another homestead.  *Huskins, Bryson & Co. v. Hanlon,* 72 Iowa 37; *Schuttloffel v. Collins,* 98 Iowa 576; *Boettger v. Galloway,* 115 Iowa 353.  If petitioners did intend to purchase another homestead and to use the overplus in such purpose, they would still be without remedy, for the reasons which follow.

III.  We may remark, in passing, that, as the sale of the homestead has not been, and, for reasons which will appear, cannot be, attacked, the amount paid by the bank on a special

4. HOMESTEAD: mortgage: homestead and nonhomestead property: sale *en masse*: apportionment of surplus.

execution in favor of the mortgagee should be apportioned so that the homestead would bear its proportionate amount of the mortgage indebtedness.  *Sutherland v. Tyner,* 72 Iowa 232.  The court awarded to petitioners the entire value of the homestead, without deduction for its share of the mortgage.  If the decree were otherwise correct, such deduction should have been made.

IV.  The petitioners could not have both the homestead and the proceeds of it.  By electing to take the proceeds, they would abandon their right to the property itself.  We may assume that, if they had acted promptly, they might have had the execution sale vacated and a new sale ordered.  They did not so elect, but permitted the bank to use its funds in paying off the first mortgage indebtedness and costs, and in acquiring real

estate which the public interests and the law would not permit it to acquire, except to protect its own interest, as provided by Section 1851 of the Code of 1897. The mortgage was a lien on the homestead, and the homestead might lawfully be sold under the special execution. The objection to the sale is not that the homestead could not be sold, but that the method of sale was wrong. The purchase was of the entire property, including the homestead. The terms of the bid were that the mortgage indebtedness should be paid, and that the indebtedness to the bank, to the extent of the overplus, should likewise be paid. The bid was indivisible and an entirety. Petitioners stood by while the bank paid off the mortgage lien upon the homestead, and while it took over the real estate, as being authorized to do, and allowed the bank to lose recourse upon the mortgagee for getting back its money and turning back the land. The bank now has the real estate irredeemably on its hands, except as it may sell the same for an amount which may not equal the amount for which the property was bid in. Petitioners should be estopped from now questioning the appropriation of the surplus. *Brumbaugh v. Zollinger*, 59 Iowa 384. The sale was made by the mortgagee, not by the bank. No wrongful sale or any sale was made by the bank. The petitioners in demanding the proceeds are demanding the benefits of the sale. They are not now bringing an action for damages based on the wrongful deprivation of their homestead rights. The homestead, as the case now stands, was rightfully sold, and the petitioners are seeking the benefits of the sale. They are not claiming the forty. The bank would not have made its bid, except to secure the application on its execution of the overplus which its bid created. The offer of the bank, of which the petitioners are seeking to take advantage, was not that the bank should buy the land, pay off prior indebtedness, and pay the balance to the petitioners. The offer of the bank was not to pay for the 184 acres the amount owed on the prior execution and pay the petitioners $4,646.36 or any other sum for the forty separately. Their offer was $15,000 for the entire farm, for the purpose of paying off the prior indebtedness and applying $4,646.36 on its execution. The answer apprised the petitioners of these facts. With full knowledge of the facts, the petitioners elected to stake their case on

a claim to the overplus of the bid, an overplus which the bank never agreed by its bid to create, except for application on its judgment. The petitioners have affirmed the acceptance of the bank's bid, and have necessarily affirmed all that inheres in the bid. The proceeds must be applied in accordance with the terms of the bid. *Vanslyck v. Mills & Co.*, 34 Iowa 375; *Jensen v. Murphy*, 199 Iowa 524.

The judgment is—*Reversed*.

FAVILLE, C. J., and EVANS and ALBERT, JJ., concur.