In re Estate of Maurice Cahill, Sr., M. D. Cahill, Thos. Cahill and Morice Cahill, Proponents, Appellees, v. Maurice Cahill, Jr., Daniel Cahill, Frank H. Cahill and John Cahill, Contestants, Appellants.

**Wills:** TESTAMENTARY INCAPACITY: *prima facie* EVIDENCE. An adjudication of incompetency and incapacity to manage property is in the nature of a judgment *in rem,* and so long as the same is in force is *prima facie* evidence of the insanity and incapacity of such person to make a will.

**Same:** EVIDENCE: EXAMINATION OF JUDICIAL RECORD. A guardian of person and property may be appointed for either an incompetent or for a drunkard or spendthrift, and where the record is silent as to the ground for the appointment parol testimony is admissible to explain it, though inadmissible to contradict the record. And when the court has admitted evidence from one side touching the ground of appointment it should allow the other side the same liberty.

**Same:** REBUTTAL EVIDENCE. Where the proponent of a will had testified that one of the contestants had secured the appointment of a guardian for testator because of habitual drunkenness, rebuttal evidence by such contestant that he had not heard the proponent testify that testator had been drinking for a long time, acted queer and like an insane person, should have been received.

**Same:** EXPLANATORY EVIDENCE. Where the proponent in a will, contested on the ground of mental incapacity, offered in evidence an instrument purporting to have been made by testator after

the appointment of a guardian for him, evidence tending to explain how the testator came to make the deed and how the notary came to take the acknowledgment was admissible.

**Wills:** CONTEST: PROBATE. Where the probate of a will is contested on the ground of mental incapacity and at a time when the contestants are asking the probate of a prior will, neither will should be admitted to probate until the contest is decided in a proceeding in which all parties interested have notice.

*Appeal from Linn District Court.*— HON. MILO P. SMITH, Judge.

WEDNESDAY, MAY 15, 1912.

THIS is a contest over the probate of a will of Maurice Cahill, Sr. deceased. The objections interposed were want of testamentary capacity; and the contestants asked the probate of a prior will. Upon trial to a jury there was a verdict finding Cahill competent on August 4, 1908, to make a will, and the paper executed on that date as his last will and testament was admitted to probate. Contestants appeal.—*Reversed* and *remanded.*

*Dawley & Wheeler* and *Crosby & Fordyce* for appellants.

*B. L. Wick, Lewis Heins,* and *Maurice Cahill* for appellees.

DEEMER, J.—Maurice Cahill, Sr., died March 18, 1910, at the age of seventy-nine years, leaving surviving six sons and one daughter. The survivors are all of age, and the sons are the parties to this litigation. Deceased was a native of Ireland, but came to this country when he was about eighteen years of age, and in the year 1855 settled in Linn county, Iowa, where he engaged in farming. Although given to the use of intoxicating liquors during his adult life, which use increased with years, deceased was

quite successful as a farmer, and accumulated considerable property. While uneducated and unable to read and write, he was, in his prime, industrious, thrifty, and strong, both mentally and physically. On October 29, 1899, he executed a will whereby he disposed of his entire estate; but in February of the year 1901 upon application of his oldest son, Maurice, Jr., a temporary guardian was appointed for him upon a petition alleging unsoundness of mind and excessive indulgence in intoxicants. After due notice and a trial with a defense by a guardian ad litem, Maurice Cahill, Jr., was appointed a permanent guardian, and as such duly qualified and acted as such down to the death of his ward, in March, 1910. The instrument in question was executed August 4, 1908. It appears to have been properly executed, and is signed and attested by the requisite number of witnesses. Contestants introduced testimony to show that as early as the fall of the year 1899, deceased became afflicted with *arterio sclerosis* of a pronounced type, and that this as usual grew worse from time to time, finally ending in complete *dementia* and general incapacity to make a will. It is claimed that at the time when the last will was executed testator lacked testamentary capacity, and that the instrument should not have been admitted to probate. Upon the issue of mental incapacity alone, the case was submitted to a jury, resulting in a verdict in favor of the proponents. The errors relied upon for a reversal relate to rulings on the admission and rejection of testimony and to certain of the instructions given and refused.

    I. The contestants offered in evidence the petition for the appointment of a guardian for the deceased and the record of the proceedings thereunder, including the final decree, which, in effect, found that the deceased, defendant in the guardianship proceedings, was mentally incompetent and incapable of transacting his business, that for some time he had been unable to manage his affairs, and

1. WILLS:
testamentary.
incapacity:
*prima facie*
evidence.

that he was mentally unbalanced and addicted to the excessive use of intoxicants. The guardianship was of both the person and the property of the deceased. This testimony was received, and the trial court gave the following instruction with reference thereto:

(9)   The evidence shows that in the year 1901, and before the instrument in controversy was executed, there was by this court a guardian appointed over the property of the testator on the ground that he was mentally unbalanced, and using intoxicating liquors to excess, and consequently was squandering, and likely to squander, his property. This evidence has been admitted solely as a circumstance or incident to be considered by you in connection with all the other evidence in the case touching the ability of Maurice Cahill, Sr., to dispose of his property by will; and the order for and appointment of such guardian is not an adjudication, nor is it *prima facie* evidence, of his want of testamentary capacity; for the state of being unfit to manage his property and business affairs generally on account of mental unsoundness, and excessive use of intoxicating liquors, is not inconsistent with capacity to make testamentary disposition of property. In other words, a person may be capable of making a valid will and not capable of managing his property affairs generally. The fact that it is recited in the bond of the guardian that Maurice Cahill, Sr. was of unsound mind is not a legal finding or adjudication that he was of unsound mind, nor should you regard it as such.

With reference to this, contestants asked the following:

(9)   You are instructed that testamentary capacity includes more than the power of memory. It includes the power of reason, judgment, and deliberation to a reasonable degree.

(10)   You are instructed that in determining under these instructions whether Maurice Cahill, Sr., had with the other qualifications necessary to make a valid will sufficient knowledge of the extent and character of his property, you should take into consideration the testimony introduced upon this trial pending to show that said Maurice Cahill, Sr., had for years prior to the making of this document

been under guardianship, and therefore deprived of the management or control of his property, that said Maurice Cahill, Sr., was unable to read or write, and to what extent, if any, he failed to realize the amount or character of his property then in his guardian's hands.

(11) You are instructed that a person under guardianship is *prima facie* incompetent to make a valid will.

In giving this ninth instruction and in refusing No. 11 asked by contestants, we think the trial court was in error. The general, if not universal, rule now is that an adjudication of incompetency and incapacity to manage property is in the nature of a judgment *in rem*, and, while it remains in force, is *prima facie* evidence of testator's insanity and incapacity to make a will. *Mileham v. Montagne*, 148 Iowa, 476; *In re Fenton's Will* 97 Iowa, 192; *Linkmeyer v. Brandt*, 107 Iowa, 750; *Spiers v. Hendersholt*, 142 Iowa, 446; *In re Van Houten's Will*, 147 Iowa, 725; *Crowninshield v. Crowninshield*, 2 Gray (Mass.) 524. See also, *Stone v. Damon*, 12 Mass. 488; *Stevens v. Stevens*, 127 Ind. 560 (26 N. E. 1078); *In re Wheelock's Will*, 76 Vt. 235 (56 Atl. 1013); *King v. Gilson*, 191 Mo. 307 (90 S. W. 367).

II. Proponents were permitted to show, over objections interposed by contestants, that the guardian was appointed for the deceased because of his excessive use of liquors and not because of mental incompetency, save as such intoxication may have incapacitated him from caring for his property. When contestants offered testimony to show that the appointment was because of mental incapacity, the trial court sustained objections to the questions, and contestants' testimony on this issue was not received. In this there was manifest error. If the decree appointing the guardian had expressly found the deceased unsound of mind, doubtless parol testimony would have been inadmis-

2. SAME:
evidence:
examination
of judicial
record.

sible because in contradiction of the record, but as a guardian may in this state be appointed for one who is an habitual drunkard, or a spendthrift, as well as for one who is unsound of mind, we think the rule should be that, where the record does not expressly state the ground for the appointment, parol testimony is admissible to show the reasons therefor. Of course, parol testimony should not be allowed to contradict a record; but, if the record is silent, parol testimony may be adduced to explain it.

The trial court, however, must be consistent in its rulings, and if it permits testimony from one side on this question, it should allow the other to enter the same domain.

III. The following excerpts from the record will show the next point relied upon: "The proponent Mike Cahill, a witness on behalf of the proponents, testified as follows:

3. SAME: rebuttal evidence.

'I guess I was a witness on the hearing for guardianship. . . . I thought he needed a guardian as well as my brothers, but not as to taking care of his property, except because he was drinking too much. On that investigation in the guardianship matter I was present at the courthouse. I think Mr. Crosby and Brother Maurice had explained to the court the conditions, the way Father was drinking, etc., and, if I remember right, after they got through with the explanation, he turned to me, and asked me if that was about so, and I said, "Yes." Whatever it was Maurice had stated about my father when he was a witness I assented to that. When the court asked me if it was right.' . . . The contestants called the witness Maurice Cahill, Jr., in rebuttal, and asked him the following questions: 'Did you hear Mike Cahill on that hearing (guardianship proceeding) testify before this court in response to the question asked him as to the condition of his father, how he acted, make the statement that his father had been drinking for a long time, and had been acting queer, and would act more like an insane man than anything else?' Also: 'At that time

did you hear your brother Michael D. Cahill testify in response to a question asked him as to the character of his father in regard to spending money, wanting to spend all the money he could get, that he was drinking heavily, and that he was acting queerly so that he had reached the conclusion that his father was of unsound mind, and didn't know what he was doing?' To each of these questions the proponents objected as incompetent, irrelevant, and .immaterial, leading, and not rebuttal, which objections were sustained by the court and the witness was not permitted to answer." Manifestly these rulings were erroneous. The testimony was clearly in rebuttal, and it was not so leading as to be subject to objection. It was necessary to call the witnesses'. attention' to the subject matter of the testimony which it was proposed to contradict or rebut.

IV. Proponents introduced a deed· purporting to have been made by the deceased in the year 1908. In order to meet this, contestants called John J. Cahill as a witness, and asked him the following: " 'You may

4. SAME: explanatory evidence.

state what, if anything, you know about the old gentleman (Maurice Cahill, Sr.) signing that deed?' Also: 'State if you know how it happened that Mr. Park, who appears to have been the notary who acknowledged the deed for the Kenwood Park property to your sister, happened to allow your father to sign the deed?' Both of these questions were objected to by the proponents, and the objections sustained; and the witness was not allowed to answer." These rulings were erroneous. It was important for contestants to show, if they could, how it was that the deceased was permitted to make the deed, and how it. happened that a notary public would take his acknowledgment if he were, as claimed, of unsound mind.

V. Contestants asked that a prior will executed by the deceased in October, 1899, be admitted to probate. Notice of its probate was duly given, and April 18, 1910, fixed as the day for hearing. On April 11, 1910, the

will in question was filed with the clerk, but no notice
was ever given of its probate. All the parties,
save Elizabeth Cahill Curry, a daughter and
one of the beneficiaries under both wills, appeared either
as proponents or contestants, and part of them filed the ob-
jections under which the contest was had. Under this
record the second will should have been probated, and, in
view of the filing of the subsequent will, the first one should
not have been, until the matter of contest was settled.

5. WILLS: con-
test: probate.

The trial court did not err in refusing to submit to
the jury the question of probating the first will as requested
by contestants; but it should not have ordered the probate
of the second until all parties in interest appeared or notice
was given as provided by statute. For the errors pointed
out, the orders and decrees must be, and they are, reversed,
and the cause remanded for proceedings in harmony with
this opinion.—*Reversed* and *remanded*.