MARY E. JONES et al., Appellees, v. L. W. SCHAFFNER et al., Appellants.

PROCESS: Original Notice—Service on Incompetent Under Guardian-
1   ship. The requirement that, in proceedings for the sale of the real estate of an incompetent under guardianship, the original notice and copy of petition (Sec. 3207, Code, 1897) be served both on the incompetent and on the guardian (Sec. 3526, Code, 1897) is for the purpose of furnishing the fullest possible information (1) to the incompetent, (2) to the guardian, and (3) to the court. This · purpose *may* be accomplished other than by a *literal* compliance with the statute: i. e., service of an ample notice, with copy of petition which clearly recites the fact of guardianship, may be sufficient when served on the incompetent and on a person with whom the incompetent resides, even though there be *no* service on the guardian. So held where the guardian was plaintiff in an individual capacity.

APPEAL AND ERROR: Scope of Remedy—Effect of Failure to Appeal.
2   Failure to appeal from a decree in partition waives objection to a merely *defective* service; also, to an error in adjusting a homestead right in the property.

**GUARDIAN AND WARD:** Appointment—Operation and Effect. An unreversed adjudication of mental incompetency and the appointment of a guardian generate a prima-facie presumption of continued mental incompetency. Record reviewed, and held sufficient to overthrow the presumption.

**INSANE PERSONS:** Guardian Ad Litem—Delayed Appointment. Delay in the appointment of a guardian *ad litem* and in the filing of his answer until near the submission of an equitable proceeding in no wise affects the jurisdiction of the court.

**PARTITION:** Proceedings and Relief—Partition in re Homestead. The homestead privilege may, in partition proceedings, be waived by the parties in interest; and in case there be no waiver, the court may adjust such right in such manner as seems equitable; and error therein must be corrected by appeal, and not by independent action.

*Appeal from Webster District Court.*—R. M. Wright, Judge.

DECEMBER 31, 1920.

OPINION ON REHEARING JUNE 23, 1922.

In a prior action, brought by Leah M. Jones for the partition of real estate, a decree was rendered granting the relief prayed, and ordering a sale of the property and partition of the proceeds. At a sale made pursuant to such decree, certain of the property was sold and conveyed by referee to L. W. Schaffner. Such sale was confirmed, and the referee's deed to Schaffner approved by the court. Thereafter, no appeal having been taken from said decree, this action was begun by Leah M. Jones, as guardian of Mary E. Jones and as guardian of Frank Jones, to vacate and set aside said decree of partition and the sale and conveyance pursuant thereto, as being entirely void and of no effect. On the trial below, the court held with the plaintiff, and set aside the decree of partition. From that decree, the defendant Schaffner appeals. At a prior term of this court, an opinion was filed reversing the decree below on matters of abatement, and without discussion of the merits. 180 N. W. 672. After further examination of the record, upon appellees' petition for rehearing, we reach the conclusion that objections urged in abatement of the action may well be waived

or disregarded, and the appeal may properly be considered upon its merits. The opinion referred to is, therefore, withdrawn, and substituted by the following.—*Reversed.*

*Healy & Faville,* for appellants.

*Olney Allen, Trewin, Simmons & Trewin,* and *Helsell & Helsell,* for appellees.

WEAVER, J.—To an intelligent understanding of the issues now presented, a preliminary statement of the circumstances attendant upon the partition proceedings is necessary.

1. PROCESS: original notice: service on incompetent under guardianship.

Benjamin Jones, a resident of Fort Dodge, died intestate, December 28, 1906, survived by his wife, Mary E. Jones, and five children: Leah M. Jones, Frank Jones, T. Ann Jones (now Murray), Octavia E. Jones (now Kennedy), and William Jones. Deceased died seized of 20 or more tracts or parcels of land in that county, among which were two certain lots which had been occupied as the family homestead. In the year 1884, Mary E. Jones was committed for a time to the state hospital for the insane, upon order of the commissioners of insanity of Webster County, but within a few months was returned to her home, in an improved condition. Some years later, there was a recurrence of the attack, and she was again sent to the hospital, from which she was finally discharged on July 8, 1904. The order upon which she was discharged was as follows:

"Des Moines, Iowa, July 8, 1904.
"In the Matter of Mrs. Mary E. Jones, insane, Webster County.
"Upon the recommendation of M. N. Volding, superintendent of the state hospital at Cherokee, and upon the application of Benjamin Jones, husband of the patient named, it is ordered that Mrs. Mary E. Jones be permanently discharged from the state hospital as improved.
"I hereby certify that the foregoing is a full and true copy of the record of the action of the state board of control of said institution in discharging the patient named.

"Signed and attested by the seal of said board this 8th day of July, 1904. S. F. Treet, Secretary Board of Control.".

Three years later, and after the death of Benjamin Jones, the daughter Leah applied to the district court for appointment as guardian of her mother. The application, reciting the prior adjudication of the mother's unsoundness of mind, the death of Benjamin Jones, and a later order of the court, directing the administrator of his estate to pay $60 per month for the use and benefit of the said Mary E. Jones, states the reason for such guardianship as follows:

"That it is proper and necessary that a guardian should be appointed of the said Mary E. Jones, so that no question may arise as to the payment of the said allowance, and that her personal property may be properly handled; that the said Mary E. Jones at times fully understands business affairs and matters; and that she has talked this matter over with your applicant and desires that your applicant, who is her eldest daughter, should be appointed as her guardian."

On presentation of this petition, Leah M. Jones was appointed temporary guardian, under date of February 21, 1907. Notice of this proceeding was served upon Mary E. Jones; and no defense being made, her default was entered, and the appointment of guardian made permanent, under date of March 29, 1907.

Five years later, on April 27, 1912, the said Leah M. Jones filed her petition in equity, seeking the partition of all the real estate of which Benjamin Jones died seized, including the tract occupied as a homestead. Said petition set out the fact that Mary E. Jones was the widow of the deceased, and as such was the owner of an undivided one third of said property; that the plaintiff, Leah M. Jones, in her own right and as grantee of her brothers, Frank and William H., was the owner of a six-fifteenths part, and that her sisters Octavia and Ann were each the owners of a two-fifteenths interest therein. It was also further alleged that, since the death of deceased, plaintiff had been appointed and was then the legally acting and qualified guardian of her mother, Mary E. Jones. The petition named

as defendants in said action the said Mary E. Jones and each and all of the children and heirs of the deceased, except the son William H. Jones, who was alleged to have conveyed his interest to the plaintiff. Original notice of said action was served in Webster County upon all the named defendants except Frank Jones, who was not found in the county. It was alleged in the petition, however, that Frank Jones was under guardianship of G. F. Rankin, upon whom the officer's return shows service of said notice. Said return of service upon Mary E. Jones certifies that it was served upon her:

"By offering to read the same to her, which she refused to hear, and by offering to deliver to her personally a copy thereof, which she refused to receive, and by reading the same to T. Ann Jones, the person having the care and custody of said Mary E. Jones, and with whom the said Mary E. Jones lived, and by delivering to her a copy thereof for the said Mary E. Jones; the said Mary E. Jones at said time being a widow, and Leah M. Jones, guardian of said Mary E. Jones, not being found in the state."

Said notice was made returnable at the regular term of the district court of said county, to be held beginning September 9, 1912. The suit thus begun remained pending and undetermined for nearly three years. At the September, 1912, term of said court, Kenyon, Kelleher & O'Connor, a firm of practicing attorneys in Fort Dodge, Iowa, appeared in the action, and filed an answer for the said Mary E. Jones, alleging that Leah had collected a large amount of rentals and income from the real estate for which she had never accounted, and asking that she be required to make proper accounting and settlement therefor. It was further alleged in said answer that, since the death of Benjamin Jones, the said Mary E. had been in the occupancy of a part of the property sought to be partitioned; that no action had ever been taken for the admeasurement of her dower, or for the setting off to her of her share in the property, as provided by statute; and that, because of such fact, the suit for partition was prematurely begun, and should be abated. Further answering, it was denied that a sale of the property was necessary to effect a partition or division of the property. This

answer was verified by the affidavit of Mary E. Jones, and filed November 2, 1912. On March 24, 1915, D. M. Kelleher filed a further answer as guardian *ad litem* of Mary E. Jones, denying generally the allegations of the petition, and adopting the separate answer of Mary E. Jones, theretofore filed. The same counsel also entered appearance for the other defendants, T. Ann Jones, Octavia E. (Jones) Kennedy, and G. F. Rankin, guardian of Frank Jones. On April 24, 1915, a decree was entered for partition, as prayed. As a part of said decree, it is recited that, it being made to appear "that heretofore an order has been made appointing Leah M. Jones as guardian of Mary E. Jones, and the court finding that the said Leah M. Jones is the plaintiff herein, it is hereby ordered by the court that D. M. Kelleher be and is hereby appointed guardian *ad litem* for the said Mary E. Jones, and the said guardian having filed his answer, and the court being advised in the premises, finds" the facts to be as stated in the petition. Said decree further recites that the administration of the estate has been completed, and all debts of said estate have been fully paid; that the court, having "full jurisdiction of the persons and the subject-matter, finds that Mary E. Jones is the owner of the undivided one third of all the described property, and her said title and interest are hereby established and confirmed, and that she expressly waives homestead rights in and to all of above property." The decree further confirms the title of T. Ann Jones (now Murray) and of Octavia E. Jones (now Kennedy) each to a two fifteenths of said property, and also confirms plaintiff's title in her own right to two fifteenths of said property, and an additional two fifteenths thereof as grantee of William Jones. It is further provided that, the plaintiff Leah having made claim to the remaining two-fifteenths share inherited by Frank Jones, and an issue being joined thereon between said two parties, the determination of such issue as between them is reserved from the decree, to be later adjudicated. The court further finds that the property is not susceptible of partition in parcels, and that the same should be sold and the proceeds thereof be divided in the proportions above stated. By the same decree D. J. Coughlan is named as referee to make the sale, and three other persons

are appointed to appraise the property in parcels. It is finally provided that the sale of the property shall not be delayed for decision of the issue between plaintiff and Frank Jones, or for the final accounting by plaintiff in the matter of her trust as guardian, all of which matters are to be adjusted in the final order for distribution of the funds arising from the partition sale. No exception to the foregoing decree appears to have been preserved by any of the parties to the suit, nor was any appeal taken therefrom.

An appraisal of the several parcels of real estate was made by the persons appointed for that purpose, a valuation being placed upon each item thereof. Included in this list is the property known as the homestead, which was appraised at $24,000. Thereupon, the referee gave public notice by two publications in the local daily newspaper of August 6 and August 7, 1915, stating the fact of the appraisement and of the value so fixed upon each item of property, and inviting bids thereon at not less than appraisement, until August 26, 1915. On October 2, 1915, L. W. Schaffner made to the referee a. written offer of $25,000 in cash for the homestead property, subject to the approval of the court. Of this offer the plaintiff, Leah Jones, had notice, and at first expressed a desire to take the property herself at the price named. The referee prepared a report of the Schaffner offer and of the wish of plaintiff to become the purchaser; but before the same was submitted to the court, plaintiff for some reason withdrew the suggestion of her said wish, and that part of the report referring to her as desiring to purchase the property was erased. On October 4, 1915, the court entered an order reciting Schaffner's offer, and that counsel on both sides consented to its approval, and that the price offered was the fair and reasonable market value of the property, and thereupon approved the same, and ordered the referee to make a deed accordingly, to be delivered upon payment of the agreed consideration. The deed so ordered was made and delivered and approved under date of November 27, 1915, and the consideration therefor was paid in full. No objection was made or exception taken by any of the parties to the confirmation of said sale or approval of the deed.

Something more than a year later, on December 23, 1916, this independent action was begun, as hereinbefore stated, by Leah M. Jones, in her capacity as guardian. The principal ground of her attack upon the validity of the partition is that Mary E. Jones was at all times of unsound mind, and incompetent to transact business for herself or to understand the nature and effect of said proceedings; that original notice of such action was not served upon her "in the manner and form" provided by statute, nor was any such notice served upon Leah herself. It is also alleged that the appearance for Mary E. Jones by counsel was unauthorized, as was also the appearance and answer by guardian *ad litem;* and it is further insisted that the entry in said decree of the consent of Mary E. Jones to a partition of the homestead was without authority.

The defendants, on their part, assert the validity and sufficiency of the partition decree to sustain their claim of title.

I.   The first, and perhaps only vital, question presented by this appeal is one of jurisdiction. If the decree which plaintiff would set aside was rendered by a court having jurisdiction of the subject-matter and of the parties, and the relief granted is within the scope of its constitutional powers, no other court, nor even the same court in another action, may assume to ignore or deny its conclusive effect. The general rule thus stated is too elementary and familiar to require discussion or citation of authorities. The jurisdiction of the district court of the subject-matter of partition of real estate within the county is fixed by statute, Code Section 4240, and by an unbroken line of precedents. The only persons having any interest in the lands of the Benjamin Jones estate were his surviving wife and children, all of whom were parties to the partition proceedings, all being served with notice thereof, and each and all being represented therein by counsel. From this general statement, the son William should be excepted, he having conveyed his interest in the property to Leah Jones. Of the question raised upon the validity or sufficiency of notice to the widow, we will speak in a later paragraph of this opinion. As we have already noted, none of the parties on either side preserved an exception

2. APPEAL AND
ERROR: scope of
remedy: effect
of failure to
appeal.

to the decree, or appealed therefrom. The time for appeal or for petition for new trial had been allowed to expire unimproved when this independent suit in equity was begun, to vacate and set aside as void the adjudication which was the product of ten years' incubation by a half dozen distinguished chancellors and long array of able lawyers. It should go without saying that, upon such record, nothing less than a clear showing of fatal jurisdictional defect can justify an attempt to invalidate a decree so rendered. Has any such defect been shown? In our judgment, this question must be answered in the negative. It must be kept in mind—what appellees seem inclined to forget— that this is not a new trial of the issues in the partition case, nor is it a proceeding for the correction of errors occurring in that proceeding. Had any of the parties so desired, a trial *de novo* could have been had by the simple expedient of an appeal; but waiving that right, they waived all right to complain of any irregularities or errors which might have been corrected or cured on a trial *de novo*. It is, of course, the contention of appellees that there was a jurisdictional defect in that proceeding, in that the court did not acquire jurisdiction of the property or person of Mary E. Jones; and to that proposition we now give attention.

II. The various phases in which this objection is presented all cluster around and have their origin in the claim of the mental incompetency of Mary E. Jones. The mere incompetency of the party, even if it be unquestioned and complete, does not prevent the court's acquiring jurisdiction over or authority to pass upon her property rights. Though a person be a lunatic or idiot or minor or otherwise without capacity to transact business, she may be made party to any litigation affecting her property interests or property rights, and adjudication thereof be had as effectively as if she were of normal mental capacity. To accomplish this, there must, of course, be substantial compliance with the law prescribing the method and manner of acquiring jurisdiction; but, jurisdiction once acquired, the incompetent is bound by the adjudication of every question properly within the scope of the relief prayed.

Manifestly, the purpose of the requirement that original

notice and copy of petition be served upon the incompetent and the guardian is not only that they be given opportunity to defend, if defense be desired, but to insure to the court itself a full and fair disclosure of the situation with which it has to deal, and to enable it to make such orders, if any, as shall appear equitable, to protect the interest of the party who is supposedly without capacity to act in her own behalf. The law provides no stereotyped or cast-iron form of notice, but does impose the duty of making clear to the other parties and to the court the nature of the relief it proposes to ask. Now it is not entirely clear upon what theory appellees allege that original notice of the pendency of the partition suit was "never served upon the said Mary E. Jones in the manner and form required by statute." That notice is in evidence, with proof of its service. It names Leah M. Jones as plaintiff, and Mary E. Jones, Frank Jones, T. Ann Jones, Octavia E. Kennedy, and G. F. Rankin, as guardian of Frank Jones, as defendants. In the body of the notice the defendants are severally informed that plaintiff is suing for a partition of the real estate, describing each parcel of the lands left by Benjamin Jones. It further notifies the defendants that plaintiff "will ask that the said property be sold, as it is impossible to divide the same according to the respective interests of the owners thereof." Upon this notice is indorsed the sheriff's return of service. Later, each and every one of the defendants appeared to the proceeding. The proof of service upon Mary E. Jones certifies the offer of the sheriff to read the notice to her, and her refusal to hear it, his offer to her of a copy of the notice and petition, and her refusal to receive it, which action on part of the officer was supplemented by service of such notice upon the daughter with whom Mary E. Jones was then living, and by leaving with her copies of said papers for the mother. That this was a substantial compliance with the statute seems very plain; but even if it be open to criticism of its technical form, it is, at the worst, a case of *defective* service, and not a *failure* of service, and does not affect the validity of the proceedings. Leah M. Jones, as plaintiff in her own right, was entitled, if so minded, to bring and prosecute the action for partition. To a proper adjudication of the rights of her cotenants in common,

it was necessary for her to make them all parties. This she did, and properly named her mother as a defendant. If the mother was insane, and she knew it, and failed to disclose that fact to the court, it could well be doubted if the incompetent woman would be bound by the decree. But there was no concealment of that kind. The petition, a copy of which was served with the notice, distinctly alleges that Mary E. Jones is under guardianship of her said daughter, "who is now the legally acting and qualified guardian of Mary Jones * * * and is the owner of an undivided one third of all the above property," and in addition to the partition prayed for, asks "such other and further relief as equity can give." It was upon such petition that partition was granted, and the decree now sought to be repudiated was entered. What more was needed to authorize such action? The court had jurisdiction of the subject-matter, and every person having any interest in the case was in court. The alleged guardianship of Mary E. Jones was admitted of record, as was also the representative character of Leah as guardian. The court was a court of equity, and as such it was within its power and discretion to make such order with reference to the subject as in its judgment was reasonably necessary to protect the rights of the ward. If it did not do so, it was an error of omission, which could have been cured on appeal. Indeed, it must be said that every material fact pressed upon our attention in support of the demand to set aside the partition decree was fully developed in that proceeding, and must be conclusively presumed to have had consideration by the court in reaching its decision.

III.     Thus far, we have considered the case upon the appellee's assumption that Mary E. Jones was without mental capacity to act for herself with reference to the partition. We are not satisfied that the showing made sustains this conclusion. It is true that, during the period of 28 years before the partition was begun, Mary E. Jones was, on two different occasions, found a fit subject for treatment in the state hospital for the insane, and was so treated on each occasion for several months. She was finally discharged as "improved" in July, 1904. Three years

3. GUARDIAN AND WARD: appointment: operation and effect.

later, and five years before the partition action was begun, and eight years before it was finally tried, Leah, upon her own application, was appointed guardian for her mother. In her application, Leah states that "the said Mary E. Jones at times fully understands business affairs and matters, and has talked the matter over with the applicant, and desires the appointment of the latter as her guardian." Since her discharge from the hospital, Mrs. Jones has lived continuously with her daughters, or some one of them. The evidence of witnesses acquainted with her fairly indicates that she is a highly nervous woman, easily excited, and given at times to extravagant language; but we think it falls short of establishing that degree of mental unsoundness which deprives her of reasonable capacity to transact ordinary business. Some of the witnesses express the opinion that she is not of sound mind; but as a rule, they who so testify speak with considerable hesitation and qualification. The rector of the local church, a long-time acquaintance, testifying for the appellee, says:

"I feel it is true now that that woman is not insane, but she is of a very nervous temperament. She is queer about things."

Another witness for appellee, a near neighbor, says:

"I have an opinion as to whether or not during that time she was a woman of sound or unsound mind. At times, when she was very nervous, I thought she was unsound."

Another of appellee's witnesses, one of Mrs. Jones's near neighbors, after describing the woman's peculiarities, said:

"But she was excitable, and sometimes rather erratic and wild in her conversation. I think she was of unsound mind."

To this, he added:

"It is a pretty fair way to put it that at times she was excitable and nervous, and at other times she was not in that condition. I saw her often,—very often. At times, she was excitable, nervous, and high strung, and at other times, she was not that way."

A woman physician, who expressed the opinion that Mrs. Jones was mentally unsound, also testified as follows:

"She was in deep depression in 1884. She got over that,

and got much better. She complained about the treatment of her daughter, and about her not providing for her, and about her lack of funds. She thought that, with her means, after her husband's death she should be entitled to more luxuries and more money. * * * She complained that her daughter was living in style at the hotel, while she was living on a small pittance. She talked connectedly about it. She knew what she was talking about.''

When the partition suit was begun, she immediately took an interest in it, employed as counsel the firm of Kenyon, Kelleher & O'Connor, whom she frequently consulted, and who represented her throughout the proceeding. She discussed with others the advisability of making claim of homestead·rights in the property, and having the same set off to her, and finally decided that partition on that basis would be unwise, because, if she was charged with the value of the homestead, which was not income-producing property, the remaining portion of her share under the law would be insufficient for her proper support,—a line of reasoning which, whether correct or not, has no tendency to show unsoundness of mind. The fact that, in the somewhat remote past, she had been found a proper subject for treatment in the state hospital for the insane, and at a more recent date had been placed under guardianship, was competent evidence in support of the appellees' theory of the woman's mental incompetency, but is not conclusive upon that proposition. In a few jurisdictions, the opposite rule prevails; but in Iowa, as in most other states, proof of a prior adjudication of unsoundness of mind affords no more than a presumption that such incompetency exists at a later date, and the strength of such presumption is lessened in proportion to the remoteness of the adjudication. *In re Will of Fenton,* 97 Iowa 192; *Linkmeyer v. Brandt,* 107 Iowa 750; *In re Estate of Hanrahan,* 182 Iowa 1242; *Eagle v. Peterson,* 136 Ark. 72 (206 S. W. 55); *Mileham v. Montagne,* 148 Iowa 476, 484; *State v. McMurry,* 61 Kan. 87 (58 Pac. 961); *Sergeson v. Sealy,* 2 Atk. 412 (26 English Reprint 648); *Rider v. Miller,* 86 N. Y. 507; *Mutual Life Ins. Co. v. Wiswell,* 56 Kan. 765 (44 Pac. 996); *Rodgers v. Rodgers,* 56 Kan. 483 (43 Pac. 779); *Wheeler v. State,* 34 Ohio

St. 394; *Johnson's Committee v. Mitchell,* 146 Ky. 382 (142 S.
W. 675); *Chase v. Spencer,* 150 Mich. 99; *Executors of Hill v.
Day,* 34 N. J. Eq. 150.

"Neither contracting nor testamentary capacity requires
entire soundness of mind." *Burgess v. Pollock,* 53 Iowa 273,
275.

A party cannot avoid a contract on the ground of mental
incapacity unless it be shown that his insanity was of such
character that he had no reasonable perception or understanding
of the nature and terms of the contract. *Swartwood v. Chance,*
131 Iowa 714; *Campbell v. Campbell,* 51 Iowa 713; *Reese v.
Shutte,* 133 Iowa 681. In the present case, notwithstanding the
presumption, or the prima-facie effect of the adjudication of
mental unsoundness many years before the trial of the partition
case, the showing made by the entire record sufficiently demon-
strates Mary E. Jones's competency, at the time of said trial,
to understand and transact the business pertaining to the set-
tlement of her husband's estate and the partition of the prop-
erty of which he died seized, and that she acted intelligently and
understandingly in her participation in the partition suit.

IV. The point is made in argument that the appointment
of Mr. Kelleher as guardian *ad litem* for Mrs. Jones and the fil-
ing of his answer in that capacity were delayed until at or near
the time of the final submission of the partition
case; and this is thought in some way to affect
the jurisdiction of the court to enter the decree.
Assuming the fact to be as stated by counsel,
the defect or error so shown in no manner affects the jurisdic-
tion of the court. It may be that the entering of a decree with-
out appearance and answer by a guardian *ad litem* would have
been an error justifying a reversal on appeal, but the judgment
so rendered is not void. See *Jones v. Clyman,* 193 Iowa 1248;
*Wickersham v. Timmons,* 49 Iowa 267; *Rice v. Bolton,* 126 Iowa
654, 658; *In re Will of Wiltsey,* 135 Iowa 430, 433; *Alston v.
Emmerson,* 83 Tex. 231; *Hamiel v. Donnelly,* 75 Iowa 93; *First
Nat. Bank v. Casey,* 158 Iowa 349; *McAlister v. Lancaster
County Bank,* 15 Neb. 295. In *Walker v. Clay,* 21 Ala. 797,
where an alleged lunatic was defendant, it was held no error

4. INSANE PER-
   SONS: guardian
   *ad litem:* de-
   layed appoint-
   ment.

to allow him to appear and plead, both by guardian *ad litem* and by attorney.

V.  For reasons already mentioned, the final and most urged objection to the partition decree, that the provision therein for sale of the entire property, including the homestead, renders the adjudication void, has its sufficient answer in our finding that Mrs. Jones was not mentally incompetent to yield her consent to that order.  Without here attempting to define the limitation, if any, upon the power of the court in such case where no waiver or consent appears, there is no room for reasonable doubt that the homestead privilege may be waived by the party in interest, nor can it be questioned that the court may act thereon, and provide accordingly in his decree.  But even if there be no waiver and no consent, and the court erroneously makes such provision in its decree, it does not follow that jurisdiction is lost, nor is the decree thereby made void.  In its essential nature, the authority of the court to entertain a suit in partition implies authority to ascertain and identify, so far as possible, all persons having or claiming any share or interest or right which may be affected by such proceeding, to make them parties, plaintiff or defendant, and to investigate and determine the nature and extent of their several interests; and this having been done, it is both the right and the duty of the court to enter a decree which shall settle, adjust, and protect the rights and equities of all in the common property.  If any one or more of the parties assert a right of homestead in any part of the premises, it is within the jurisdiction of the court to provide therefor in its decree, in such manner as in its opinion will best preserve the equities of all.  It may make a mistake to the prejudice of some of the parties, but its decree is not void, and will stand as a final adjudication, if not corrected on appeal.  The question of Mary E. Jones's homestead right in this case was a proper element to be considered by the court and adjusted by the decree, whether she be regarded as sane or insane.  It *was* so adjusted.  No appeal has been taken, and the decree is the law of the case.

This opinion has been perhaps unduly extended, but it has

*5. PARTITION: proceedings and relief: partition in re homestead.*

been the thought of the writer that the merits of the controversy could be best understood by a somewhat minute recital of the material facts (mostly undisputed), stated as nearly as practicable in chronological order, covering the long period from the death of Benjamin Jones to the submission of the case in the court below. These recitals have had the further purpose of illustrating and emphasizing the proposition stated in an earlier paragraph of this discussion, that every material fact and proposition now relied upon by the appellees in support of their effort to avoid the partition decree was necessarily considered and ruled upon by the court in that case, and that the adjudication so had is not subject to review, except upon appeal. The result here announced might well be made to rest on this simple, undisputable proposition.

For the reasons stated, the decree setting aside such adjudication must be, and it is,—*Reversed.*

STEVENS, C. J., EVANS, PRESTON, ARTHUR, and DE GRAFF, JJ., concur.

FAVILLE, J., takes no part.