GEORGE WATERS et al., Appellees, v. JOSEPH PETER WATERS
et al., Appellants.

**WILLS:** Testamentary Capacity—Evidence—Negativing Presumption
1 **of Continued Insanity.** A testator will not be presumed insane at
the time he executed his will because of the production of a finding
some 26 years prior thereto by the commissioners of insanity that
he was insane and "a fit subject for treatment in the hospital for
the insane," (1) when there is no showing that his condition at
said remote time was one of general and settled unsoundness of
mind, and (2) when it appears that he was then confined in a
private hospital for some seven months, and left the hospital in a
state of mental soundness, and thereafter at all times managed his
business as a normal man. (See Book of Anno., Vol. 1, Sec. 11846,
Anno. 65 *et seq.*)

**WILLS:** Testamentary Capacity—Evidence—Adjudication of Insanity.
2 An adjudication or finding by the commissioners of insanity is ad-
missible on the issue of testator's testamentary capacity.

**WILLS:** Testamentary Capacity—Evidence—Adjudication of Insanity
3 —Parol Explanation. An adjudication of insanity on the part of
a testator which is silent as to the *character* of the insanity may
not, of course, be *contradicted*, but may be *explained* by showing the
nature and extent of testator's affliction at the time of such ad-
judication.

Headnote 1:   40 Cyc. p. 1019.   Headnote 2:   32 C. J. p. 647; 40
Cyc. p. 1041.   Headnote 3:   22 C. J. p. 1080 (Anno.)

*Appeal from Adams District Court.*—A. R. MAXWELL, Judge.

MARCH 9, 1926.

ACTION to set aside a will. From a verdict for plaintiffs,
the defendants appeal.—*Reversed and remanded.*

*Swan, Martin, Martin & Kringel* and *Meyerhoff, Gibson & Watts,* for appellants.

*E. L. Carroll* and *Don Harper,* for appellees.

VERMILION, J.—The will in question was executed on April 28, 1922. The plaintiffs offered, and the court admitted in evidence, over objection, a record of the proceedings of the board

1. WILLS: testamentary capacity: evidence: negativing presumption of continued insanity.

of commissioners of insanity of Cass County, from which it appeared that an information was filed before the board on November 19, 1896, alleging that Waters, the testator, was insane and a fit subject for treatment in the hospital for the insane, and that, upon the report of a physician appointed to examine him, and the testimony of Rev. Enright, the board found Waters to be "insane and a fit subject for custody and treatment in the hospital for the insane as a private patient," and ordered his commitment to "Enright for proper care" at the expense of the patient or his friends, and not to become a public charge. Enright testified that, when he discovered that Waters was sick, he made arrangements to have him properly taken care of; that he was taken to an emergency hospital at Davenport; that he was there from November to June; that, after he came from the emergency hospital, his mind was just as sound as it was before he was sick—and that was sound; and that he had no further care of him, more than as a member of his parish. He further testified that he took Waters to Davenport for some physical trouble, syphilis in the tertiary stage. The court, on motion of plaintiffs, struck out testimony of Enright as follows:

"Mr. Waters got sick, and was sick for some time during the fall, and he was kind of delirious."

I. The court instructed the jury, in substance, that, the testator having been adjudged to be insane, the presumption of insanity continued until the contrary appeared; that the presumption might be overcome by proof that the reason of the testator had been so far restored that he was, at the time of the execution of the will, possessed of testamentary capacity; and that the burden was upon defendants to prove by a prepon-

derance of the evidence the restoration of the reason of the testator to the extent that he then possessed capacity to make a will. This instruction, and others of like import, form the basis of appellants' chief complaint.

It is to be observed that the adjudication of insanity was over twenty-five years before the execution of the will, and that no formal discharge of the testator was shown.

It is settled in this state that a person who has been adjudged of unsound mind and is under guardianship is, while the guardianship continues, *prima facie* incompetent to make a valid will. *Cahill v. Cahill,* 155 Iowa 340; *In re Estate of Hanrahan,* 182 Iowa 1242; *Linkmeyer v. Brandt,* 107 Iowa 750.

In the case of *In re Will of Fenton,* 97 Iowa 192, it was pointed out that such an adjudication was not conclusive, for the reason that the issues presented in the guardianship proceeding did not necessarily involve testamentary capacity. We said:

"The conditions of mind that would show a person incompetent to care for and preserve property, so as to authorize a guardian, might in no sensible degree show a condition of mind to incapacitate one for making a will. The two duties may require widely different considerations and capacities of mind and body."

In considering the effect of a prior adjudication of insanity or unsoundness of mind as proof of incapacity to contract or to make a will, the distinction between an adjudication that a person is insane and requires care and treatment, and that he is mentally incompetent to manage his property and requires a guardian, has not always been observed. Yet it is a substantial one, and demonstrates that an adjudication of insanity such as to require treatment is of even less probative force upon the question of testamentary capacity than an adjudication that the person is incapable of caring for his property and requires a guardian. Both proceedings are statutory. The first is to determine only if the person is insane and a fit subject for treatment in a hospital for the insane, or, in certain circumstances, outside of a hospital. Chapter 2 of Title XII, Code of 1897 (Chapter 177, Code of 1924). The term "insane," as there used, is defined by statute to include every species

of insanity or mental derangement. Section 2298, Code of 1897 (Section 3580, Code of 1924). The other proceeding has for its object the appointment of a guardian of the estate of a person of unsound mind (Section 3219 *et seq.*, Code of 1897 [Chapter 541, Code of 1924]), and the question is whether the person is capable of transacting the ordinary business involved in caring for his property.

Obviously, an adjudication that one is mentally incapable of caring for his property has a greater tendency to establish a subsequent lack of testamentary capacity than an adjudication that he is afflicted with some—that is to say, under the statutory definition of the term, as applied to such a case, with any—form of insanity or mental derangement.

"Neither contracting nor testamentary capacity requires entire soundness of mind." *Burgess v. Pollock,* 53 Iowa 273; *Jones v. Schaffner,* 193 Iowa 1262.

See, also, *Hardenburgh v. Hardenburgh,* 133 Iowa 1, and *Zinkula v. Zinkula,* 171 Iowa 287. Testamentary capacity may exist although capacity to make contracts generally is lacking. *Meeker v. Meeker,* 74 Iowa 352; *Philpott v. Jones,* 164 Iowa 730. The rule repeatedly laid down is that, if the testator has sufficient mentality to understand the nature of the instrument he is making, to comprehend the nature and extent of his property, to know the natural objects of his bounty, with a full appreciation of the disposition he wishes to make of his estate, and of those to whom he wishes to give it, he has testamentary capacity. *Perkins v. Perkins,* 116 Iowa 253; *In re Will of Richardson,* 199 Iowa 1320.

The distinction between insanity requiring treatment, and a lack of testamentary capacity, and the fact that an adjudication of one does not necessarily establish the other, are pointed out in *Knox v. Haug,* 48 Minn. 58 (50 N. W. 934). The court there said:

"The only matter to be investigated is the alleged insanity and need of care and treatment. The degree of the insanity, except so far as necessary to ascertain if care and treatment be needed, and its effect on the capacity of the person to do business or manage his property, need not be investigated. A person may be insane on some one subject, and still be able

as the sanest to manage his own property and affairs. Such a person might need and be a proper subject for care and treatment.''

See, also, *In re Estate of Weedman*, 254 Ill. 504 (98 N. E. 956).

An adjudication of unsoundness of mind and the appointment of a guardian are prima-facie evidence of testamentary incapacity only so long as the guardianship continues. *Cahill v. Cahill*, supra.

In *Mileham v. Montagne*, 148 Iowa 476, where the testator had been adjudged insane, committed to a state hospital, and discharged seven years before the will was made, we held that the discharge was prima-facie evidence of his recovery, and cast upon the plaintiff the burden of showing that, notwithstanding his discharge, the testator was insane when the will was executed. Section 2288, Code of 1897, made the record of discharge from a state hospital prima-facie evidence of recovery.

Here, the testator was not committed to a hospital, but to Rev. Enright for proper care. It is true, there is no record of a discharge from the hospital in which Enright placed him, nor any record of discharge from custody by the commissioners of insanity, as provided for in Section 2277, Code of 1897. It does appear, however, that the testator left the hospital in about seven months; and Enright testified that his mind was then sound. There is no contradiction of this. The testimony on behalf of appellees as to the mental condition of the testator, aside from the adjudication, relates to the time a few years prior to the making of the will. Twenty-five years elapsed between the date of the adjudication and his departure from the hospital and the making of the will. During the greater part, if not all, of this time the testator transacted business, and managed and controlled his property.

There is another consideration that, we think, is entitled to weight at this point. Every person is presumed to be sane until the contrary is proven, but when settled and general unsoundness of mind is established, a presumption arises in favor of its continued existence. *Kirsher v. Kirsher,* 120 Iowa 337. In that case, where it appeared that the testator had had a

stroke of apoplexy three years before the will was made, we said:

"But this court has never held (and, so far as we have examined the cases, no other) that proof of insanity at a stated period, without reference to the particular circumstances connected therewith, is sufficient to authorize the inference of insanity at a remote subsequent period."

In *Jones v. Schaffner*, supra, we said that the strength of the presumption arising from a prior adjudication of unsoundness of mind is lessened in proportion to the remoteness of the adjudication.

The adjudication in question established, not a settled and general unsoundness of mind, even at that time, but merely that the testator was then suffering from such insanity or mental derangement as required treatment. Nothing, aside from what the adjudication itself established, was shown as to his mental condition at the time, or the character or extent of his affliction, except by the testimony of Enright. His testimony that testator was "kind of delirious" was stricken out.

In view of the character of the adjudication itself, the absence of testimony tending to show that his condition was then one of general and settled unsoundness of mind, the uncontradicted testimony of the one in whose custody he was placed that, when he left the hospital, he was of sound mind, and the long period of time that elapsed before the will was made, during which he transacted business apparently as a normal man, we are of the opinion that any presumption of continued insanity arising from the adjudication was overcome, and that the appellees were not relieved of the burden of establishing a want of testamentary capacity at the time the will was made. The circumstances of the case do not require us to say, and we do not hold, that no presumption of continued insanity amounting to a lack of testamentary capacity will ever arise from an adjudication by the commissioners of insanity that a person is so insane or mentally deranged as to require care and treatment. We hold merely that, under the uncontradicted facts of this case, no such presumption obtained at the date of the execution of the will. It follows that the instructions in question were erroneous.

II. The court did not err in admitting the record of the adjudication in evidence. It was admissible, and

2. WILLS: testamentary capacity: evidence: adjudication of insanity.

entitled to such weight, under all the circumstances, as the jury might see fit to give it. *Mileham v. Montagne*, supra.

III. We are of the opinion that the appellants were entitled to show the actual mental condition of the testator at the time of the adjudication, not to contradict it,—for, within such

3. WILLS: testamentary capacity: evidence: adjudication of insanity: parol explanation.

limitations as the character of the adjudication itself imposed, and so far as it went, it was a verity,—but for the purpose of showing the nature and extent of the testator's affliction at

that time. It is within common observation and experience, and science recognizes, that there are many forms of insanity and mental derangement requiring care and treatment, some of a temporary and others of a permanent character. The adjudication, as we have seen, determined only the fact of insanity which required treatment,—nothing as to its character. The parties were entitled to show the facts as to which the record was silent. *Cahill v. Cahill*, supra; *Mileham v. Montagne*, supra.

IV. The wife of one of the appellees was permitted, over objection to her competency, to testify to a conversation on the part of the testator. She was incompetent, under the statute, Section 11257, Code of 1924, to testify to a personal transaction with the deceased. She could testify to transactions in which she took no part, and could give an opinion as to his mental state based thereon and on her observations of him. *Denning v. Butcher*, 91 Iowa 425. It is not entirely clear whether she took part in the conversation or not. She said he was not talking to her more than to the others. We would hesitate to reverse for this alone. Since there must be a reversal on other grounds, it is mentioned, that there may not be the same uncertainty upon another trial.

Because of the necessity for a retrial on account of the errors pointed out, we express no opinion upon the sufficiency of the evidence to sustain the verdict.

Other errors assigned are either disposed of by what has been said, or relate to situations not likely to arise upon another trial.

The cause is—*Reversed and remanded.*

DE GRAFF, C. J., and STEVENS and FAVILLE, JJ., concur.