IN RE ESTATE OF AUGUST WILLER.

ALBERT WILLER et al., Proponents, Appellees, v. ANNA DOHSE, Contestant, Appellant.

No. 44320.

AUGUST 5, 1938.

Miller & Claussen, for appellant.

M. L. Sutton, for appellees.

SAGER, C. J.—We find it unnecessary in the decision of the questions before us to set out at any great length the facts upon which the parties rely. The record presents the kind of evidence commonly produced in cases of this kind, with the contradictions which are usually found in will contests. It is sufficient for our purpose to say that we have carefully gone over the record and have reached the conclusion that the action of the trial court was right.

It would extend this opinion to an unwarranted length to take up all the complaints made by the contestant, particularly with reference to the alleged errors upon which the motion for a new trial is based. This document takes up nearly thirty-four pages of the printed abstract, but, as we read the record, contestant's claims and criticisms may be summed up under a few general heads.

█ Much stress is laid upon the rulings of the trial court in excluding testimony offered by the contestant. It may be conceded that some of the rulings in this regard were not correct, but we find that wherever testimony was excluded, the excluded matter found its way into the record so that no error resulted. A few examples of the testimony of the ruling out of which contestant complains are noticed. The court excluded testimony to the effect that: "His physical condition wasn't good.  * * * He was not in good health.  * * * They (the conversations) would drift onto other matters, but when talking of Germany he would talk as if I should know all about it." This latter phrase was stricken out because a statement of opinion and conclusion. Again, this appears: "Well, he would talk, you know, without any sense to it, changing the subject." This was stricken on the same grounds. There was testimony that: "He spoke of the fact to me that he did not feel a bit good;" further, that he acted "like a sick man," and that "he appeared to be very feeble." This likewise was ruled out. Instances might be multiplied along the same general line, but, as indicated, we find it unnecessary to do so. The facts sought to be elicited by the stricken testimony we think were covered by the testimony of other or the same witnesses, and we find no error, while not approving the rulings made. If some of the stricken testimony was not exactly and in detail supplied by the wit-

nesses, there is nevertheless no error because, even if the excluded testimony had been admitted, the record still presents a jury question. Because of that fact we are not disposed to set aside the findings of the trial court. See In re Estate of Cooper, 200 Iowa 1180, 206 N. W. 95, wherein Albert, J., used language which is appropriate to the case before us (page 1184 of 200 Iowa, page 97 of 206 N. W.):

"There is nothing in the record to show that the testator was so lacking in mental capacity as to be unable to intelligently remember and identify the property he possessed and the natural objects of his bounty, and to intelligently dispose of the same. This is the ultimate measure of mental capacity that the law requires of a testator. Will contests must turn largely upon the facts incident to each case, and it is difficult to lay down a rule in such matters."

█ Contestant, as another proposition, argues that the fact that testator was under guardianship at the time he made the will made a *prima facie* case in her favor which was not overcome by proponents' testimony. With this we cannot agree. The record does in fact establish the guardianship, but it does not appear that the court, in appointing the guardian, passed upon the question of mental incompetence. A careful reading of the record shows that the court was warranted in concluding (if it did so) that this guardianship was established because of excessive drinking on the part of the testator, and that he was placed under guardianship because of his weakness in that regard. There was no testimony offered when the appointment was made, but apparently the court was given a statement of the general situation by the attorney for the children. This was made in the presence of testator's attorney, who made no objection or resistance to the application.

We held in Cahill v. Cahill, 155 Iowa 340, 136 N. W. 214, that where the appointment is not based upon any specific grounds, and might have been made upon one of several grounds, parol testimony is receivable to explain the appointment, though not to contradict it.

See, also, Brogan v. Lynch, 204 Iowa 260, 214 N. W. 514.

It was the unqualified testimony of the attorney who drew the will, and of his stenographer who was present, wrote, and witnessed the will, that at the time of the making thereof the

testator was of sound mind and understood the nature of his act. Contestant herself seems not to have seriously considered the guardianship as establishing testator's mental incompetency. She presented for probate a will drawn by him in 1934. The petition for the appointment, in which contestant joined, was filed in March 1933, and appointment of a temporary guardian thereunder was made in November of the same year. The 1934 will bequeathed his property share and share alike. The will executed in 1936 revoked the earlier will and made no provision for contestant. Another evidence of contestant's view of her father's (testator) mental condition and the purpose of asking a guardian, is this: While the sworn petition alleges that testator was "incompetent to transact business," etc., she took a deed from her father. This was dated November 23, 1933, just two days before the temporary guardian was appointed. Through and by it she acquired the home in Clinton and, so far as the record discloses, has it yet. The property so deeded, though not of great value, nevertheless represented a larger value apparently than the legatees under the present will will receive. In addition to this, the record would seem to indicate that contestant had borrowed from testator a considerable sum of money, $500 of which remained unpaid at the time of the father's death. The total estate is very small—$1,659.84, which when reduced by the estate expenses will result in an amount of less than $1,000 to be divided among the four proponents.

There is a controversy among the parties as to whether the deed to the contestant was intended to pay her for services, or not, but this conflict need not be solved. The fact of the matter is that this contestant was allowed $20 a month for support after the guardianship, for a certain period of time, and this was later reduced to $16 a month.

But contestant says that, taking it all in all, the testimony was not sufficient to overcome the presumption resulting from the guardianship. We have repeatedly held that one under guardianship is not necessarily incompetent to make a will.

What we said in Linkmeyer v. Brandt, 107 Iowa 750, 77 N. W. 493, is strictly applicable to the situation before us. Given, J., speaking for the court, said (page 751 of 107 Iowa, page 494 of 77 N. W.):

610

"Appellant cites authorities to the effect that unsoundness of mind must be presumed from the appointment of the guardian, and that it continues throughout the guardianship. In re Fenton's Will, 97 Iowa [192] 193, 66 N. W. 99. Let this be conceded, still we think these presumptions are fully overcome by the evidence as to the condition and acts of the deceased at the time he burned the will."

To the same effect is Waters v. Waters, 201 Iowa 586, 207 N. W. 598, wherein there is an extensive review of cases on this subject.

In the well-considered case of Cookman v. Bateman, 210 Iowa 503, 231 N. W. 301, Albert, J., summed the whole situation up, as it applies to the case before us, in this language (page 504 of 210 Iowa, page 302 of 231 N. W.):

"We take up first the question of mental incapacity. The law governing this question has been so long established in this state that we need make but slight reference to the authorities. It is well settled in this state that physical weakness or infirmity, if proven, is not in itself sufficient to avoid the probate of a will, and mere mental weakness, not due to mental disease, until it has reached that stage which deprives the testator of capacity for intelligent action, does not constitute mental unsoundness such as to incapacitate him from making a will. (Citing cases.)

"As to mental incapacity, the rule has been well settled in this state that one who has a full and intelligent knowledge of the act in which he is engaged, a full knowledge of the property he possesses, and an intelligent perception and understanding of the disposition which he desires to make of it, of the persons whom he desires to be the recipients of his bounty, and of the natural objects of his bounty, even though he has not sufficient mental capacity to make a contract or to attend to ordinary business matters, has sufficient capacity, in the eyes of the law, to make a will." (Citing cases.)

See In re Estate of Shields, 198 Iowa 868, 200 N. W. 219, where we said (page 691 of 198 Iowa, page 221 of 200 N. W.):

"Time and again this court has declared that mere old age or some deterioration in physical or mental powers, or peevishness, childishness, and eccentricities, are not alone sufficient to

carry to a jury the question of mental unsoundness on the part of a testator. The final question in such a situation as is presented to us is whether or not there is sufficient evidence offered in behalf of the contestant to take to the jury the question of whether or not the testator was so lacking in mental capacity at the time of the execution of the will as to be unable to intelligently know the property which he possessed and the natural objects of his bounty and to intelligently exercise judgment and discretion in the disposition of the same.''

See, also, Walters v. Heaton, 223 Iowa 405, 271 N. W. 310.

Contestant says that the testator clearly did not know what he was doing at and before the time of making the will, because, among other things, he made statements which in effect accused the contestant of stealing his money. This finds support in the fact that the old man did complain that he was not getting as much money out of the allowance made for him by the court as he understood it would be, but this is readily explained by the fact that the moneys were handled under the direction of the court and the ward was not advised that the allowance had been cut down from the original amount. Seemingly he was not taken into anyone's confidence, and he not unnaturally felt that some of his money was being withheld. But, without proceeding much further into the record, it appears that when this last will was made, the testator went to the office of Attorney Peterson and told him what he wanted and how he wanted to dispose of his property. At the time he was talking with his attorney about how he wanted *this* will, he remembered that he had already made one. He inquired in effect whether he must produce the earlier will before a new one could be executed. He spoke of having given a deed to the contestant, which he supposed was to pay her for taking care of him. Notwithstanding (he told the attorney) she was getting $20 per month of his meagre estate for the same service. In the course of the conversation he said he first intended to cut one of his sons off because he had received more than his share. On reflection he said that since this son did not have anything anyway, he might as well have his share. His failure to include the contestant is not only not unreasonable but natural, in the light of the circumstances disclosed in this record. That the old man did drink excessively at times cannot be disputed, but there

is no evidence that he was under the influence of liquor at the time he made his will. On the contrary, it is established that he was not under such influence, and the attorney who drew the will, and his assistant who typed it, had no hesitation in saying that the testator was at that time of sound mind. Other witnesses testified to the same thing, and while contestant's evidence shows many eccentricities and peculiarities, and one or more, on a somewhat slender foundation, said he was of unsound mind, a consideration of it fails to impress us that the testator was not competent to make a will.

We have examined all the cases cited by the parties, and others, and we find nothing therein which calls for a reversal of the judgment of the trial court.

As a general complaint contestant argues that the repeated adverse rulings made by the trial court to the testimony offered by her were erroneous, and had the effect of breaking into the continuity of the record as she intended to make and would have made it had the court not ruled out so much of the testimony. It may be conceded that the record is full of breaks induced by objections, rulings of the court, and statements of counsel. Confusion was further introduced by the uncertainties of the statements of some of the witnesses, made so perhaps by their lack of understanding of the English language. Be that as it may, as we have already indicated, a reading of the whole record and the inclusion of such testimony as might have been received had the court made no rulings to which objection could be made, the question of the competency of this testator was clearly a fact question which would have been for the jury had one not been waived, and was for the court as the case was tried.

Other objections and propositions urged by contestant have been carefully considered, and call for no specific attention.

It follows that the ruling of the trial court should be, and it is, affirmed.—Affirmed.

MITCHELL, STIGER, MILLER, RICHARDS, KINTZINGER, and HAMILTON, JJ., concur.